WELLS-ELKHORN COAL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 44786.   Promulgated November 30, 1932.

*Chester A. Bennett, Esq.*, for the petitioner.
*B. U. Steele, Esq.*, for the respondent.

## OPINION.

SEAWELL: The issue raised in the petition as to the constitutionality of section 280 of the Revenue Act of 1926 is fully answered by *Phillips* v. *Commissioner*, 283 U. S. 589, in which it was held that the section in question is not in violation of the Federal Constitution.

On the issue as to whether the petitioner is a transferee within the meaning of the aforementioned section, we do not think there can be any question as to the correctness of an affirmative answer thereto. In effect, what the petitioner says is that it was a purchaser in good faith for value and therefore comes within the principle of *Fostoria Milling & Grain Co.*, 11 B. T. A. 1401, where such a purchaser was not considered a transferee within the meaning of the statute. We disagree. What occurred was that the petitioner first sought to acquire the assets of the Black Diamond Coal Company through the issuance of its own stock therefor, but, since certain stockholders were not agreeable to such a transaction, the petitioner issued its stock to certain of the stockholders of that corporation for stock of a like par value and then acquired the remaining stock through a cash purchase. After the entire stock of the Black Diamond Coal Company had been thus acquired, the petitioner, as sole stockholder, had the assets of the Black Diamond Coal Company transferred to itself. In addition, under the resolution of the Black Diamond Coal Company authorizing the transfer of the properties, it was recited that the petitioner expressly assumed all of the liabilities and indebtedness of the Black Diamond Coal Company, and an agreement to that effect was signed by both corporations. The evidence offered as to the value of the assets received by the petitioner was not of the most satisfactory nature, but we regard it as sufficient to justify our finding that such value was in excess of the amount now sought to be collected from the petitioner. Whether, therefore, we view the liability as one in equity arising on account of the liquida-

tion of the Black Diamond Coal Company to its sole stockholder, the petitioner, or as one arising at law on account of the contractual obligation under which the petitioner received the assets, we reach the same conclusion, namely, that the petitioner is a transferee within the meaning of section 280 of the Revenue Act of 1926 and therefore liable for any additional tax due from its transferor for the years here in question.

The petitioner contends, however, that, even if it should be held that it is a transferee, the amounts now in question may not be collected since the statute of limitations bars such collection. The returns of the Black Diamond Coal Company for 1919 and 1920 were filed on March 6, 1920, and March 15, 1921, respectively, and the applicable statute (section 280 (d) of the Revenue Act of 1926) provides five years from the date the returns were due or were made within which to make assessments thereon, thus permitting assessment at any time prior to March 6, 1925, in the case of the 1919 return and March 15, 1926, in the case of the 1920 return. On or before January 5, 1925, a waiver was filed which purported to extend the time for assessment of the tax for 1919 to December 31, 1925. Within the statutory period as thus extended for 1919 and the original statutory period for 1920, namely, on November 19, 1925, the Commissioner mailed a deficiency notice to the Black Diamond Coal Company, setting out deficiencies for 1919 and 1920. Within the 60-day period allowed for such action the Black Diamond Coal Company filed a petition with the Board, which was finally disposed of through entry of judgment on May 24, 1928, for the deficiencies here in question. After failure to collect from the Black Diamond Coal Company, the Commissioner sought to make collection from the petitioner as transferee, a deficiency notice being mailed on April 4, 1929; that is, well within the one year provided by section 280 of the Revenue Act of 1926 for such assessment.

The contention of the petitioner is that the petition which was filed, and the proceedings which were had before the Board, by the Black Diamond Coal Company were void, since that corporation was dissolved in 1920 and the person who signed the petition was unauthorized to take such action and therefore the filing of such petition did not operate to suspend the running of the statute of limitations. A similar objection is made as to the waiver. At the date of dissolution of the Black Diamond Coal Company, section 561 of the Statutes of Kentucky provided as follows:

Any corporation organized under this chapter may, by the consent in writing of the owners of the majority of its shares of stock, unless otherwise provided in the articles of incorporation or amendments thereto, close its business and wind up its affairs; and when any corporation expires by the terms of the articles of incorporation, or by the voluntary act of its stockholders, it may

thereafter continue to act for the purpose of closing up its business, but for no other purpose; and it shall be the duty of the officers to settle up its affairs and business as speedily as possible; and they shall cause notice to be published, for at least once a week for four consecutive weeks, in some newspaper printed and published in the county, if any, of the fact that it is closing up its business; and all debts and demands against the corporation shall be paid in full before the officers receive anything.

The argument advanced is that the foregoing statute contemplates an existence after dissolution of only a reasonable length of time and that a continuation from 1920 until 1925, when the waiver and petition were signed, would constitute an unreasonable length of time. We think it clear from the expressed purpose of the statute for a continuation of the corporate existence after dissolution, namely, to enable the corporation to " close its business and wind up its affairs," that such period will necessarily vary in accordance with the peculiar circumstances surrounding a given case, and we find nothing in the decided cases of Kentucky from which a definite time limit could be fixed for all cases. In the case of *Ewald Iron Co.* v. *Commonwealth*, 140 Ky. 692; 131 S. W. 774, it was stated that " Two years is a reasonable time ordinarily for closing up the business of a corporation and, where the provisions of the statute are entirely disregarded, the parties will not be heard to say that two years is not a reasonable time," and from the above holding the petitioner argues that, " The highest court of the State of Kentucky has laid down the rule that under Section 561 two years is a reasonable time for closing the affairs of a dissolved corporation." We do not so interpret the opinion of the court. In that case there had been a disregard of the provisions of the statute and an attempt to escape certain taxes by failing to wind up the affairs of the corporation and the court said it would not allow the corporation (or its stockholders) " to profit by its own wrong." That the facts in a particular case must govern is shown from the following statements by the court in *Holliday* v. *Cornett*, 6 S. W. (2d) 497, where reference is made to the case relied upon by the petitioner:

The rigorous rules of the common law by which all rights and liabilities of a corporation cease upon its dissolution have long since been modified by statute in this state; and now, even after dissolution, such corporation may continue to act for the purpose of closing its business and winding up its affairs. See section 561, Ky. Statutes. The statute places no limitation on the time allowed for this purpose, but necessarily contemplates a reasonable length of time. In *Ewald Iron Co.* v. *Commonwealth*, 140 Ky. 692, 131 S. W. 774, it was held that two years were sufficient for the purposes of taxation. But, as pointed out in *Young* v. *Fitch*, 182 Ky. 29, 206 S. W. 29, that case has no application to the period in which the dissolved company may continue to act in settling its affairs, and it would seem that this must depend on the facts in the particular case. See *Castle's Adm'r* v. *Acrogen Coal Co.*, 145 Ky. 591, 140 S. W. 1034; *Smith* v. *Commonwealth Land & Lumber Co.*, 172 Ky. 607, 189 S. W. 912; *Young* v. *Fitch*, supra.

The evident purpose of the statute is to enable a corporation to wind up its affairs, and among the very essential duties to be performed under such circumstances is the payment of debts, including outstanding taxes. There is no suggestion that the tax liability with which we are concerned was left unsettled an unreasonable length of time, but rather that the corporate existence of a dissolved corporation could not continue longer than two years. We disagree. Certainly, it is not unusual for controversies of this character to continue for a much longer period. In some cases the extension of time is at the request of the taxpayer, who desires that the fullest consideration be given to whatever issue has arisen, and, again, at the instance of the Commissioner, who, because of the pressure of business, is unable to give earlier consideration to a particular case. In any event, on the record before us, we are satisfied that an unreasonable length of time had not expired on January 5, 1925, when the waiver was signed and on November 19, 1925, when a deficiency notice was mailed to the Black Diamond Coal Company.

Further, it is suggested that John E. Buckingham was not authorized to sign the waiver or petition in question. It is true that no meeting of the board of directors was held after the dissolution of the corporation at which authority could be given, but we do not consider that material. The statute (section 561, *supra*) provides that it shall be the duty of the officers of the corporation to settle up its affairs, and certainly action looking to the settlement of a tax controversy would come within such duties. Buckingham was president of the Black Diamond Coal Company at dissolution and became president of the petitioner, the successor. As such officer, he signed the returns of the Black Diamond Coal Company for 1919 and 1920, as well as the waiver for 1919, and the petition with respect to deficiencies which had been determined for 1919 and 1920. " The board of directors of the corporation acts as a body in managing the corporate affairs, but a tax waiver signed by one, an authorized corporate officer, is sufficient." (*Commissioner* v. *Godfrey*, 50 Fed. (2d) 79, and cited cases.) There is no suggestion that such action was beyond his ordinary corporate authority or that any other officer had been selected to perform such function. A situation such as we have here is distinguishable from that which arose in *Farmers & Planters Tobacco Warehouse Co.*, 22 B. T. A. 1331, where it was affirmatively shown that two officers had been authorized to wind up the affairs and an officer, other than those designated, sought to extend the statutory period through the execution of a waiver. The waiver was held ineffective. A similar situation does not exist in the case at bar.

In view of the foregoing, we are of the opinion that the waiver was effective to extend the statutory period for assessment to Decem-

ber 31, 1925; that the petition was properly filed by or on behalf of the Black Diamond Coal Company and accordingly operated to suspend the running of the statute until its disposition on May 24, 1928; and that accordingly the deficiency notice to the petitioner, as transferee, on April 4, 1929, was timely.

The conclusion which we have reached with respect to the statute of limitations makes it unnecessary to consider the further contention advanced by the Commissioner as to the conclusiveness against the petitioner, as transferee, of the judgment rendered against the Black Diamond Coal Company, the transferor.

*Judgment will be entered for the respondent.*