**LEYMAN CORPORATION, Intervenor-Appellee, v. PIGGLY-WIGGLY CORPORATION, Defendant-Appellant.**

Ohio Appeals, First District, Hamilton County.

No. 7350.   Decided May 21, 1951.

Peck, Shaffer & Williams, A. J. Conroy, Cottle, Campbell & Druffel, Cincinnati, for intervenor-appellee.

# 532

Nichols, Wood, Marx & Ginter, Harry Kasfir, John Osoinach, Roy Holmes, Cincinnati, for defendant-appellant.

## OPINION

By THE COURT:

This case was before this Court on appeal in H. S. Leyman Co. v. Piggly-Wiggly Corporation, reported in 68 N. E. (2d) 486, from an order overruling the plaintiff's motion for an order making The Leyman Corporation a party to the action and dismissing the action on the ground that the plaintiff was not the real party in interest.

The notice of appeal which initiated that appeal recited that the appeal was on both law and fact, and the preliminary question as to whether, on the record, this Court had jurisdiction to hear the case de novo, on the issues raised by the pleadings was raised. It was urged in support of our jurisdiction to hear and decide the final issues that the pleadings presented a chancery case, and, on the other hand it was contended that the action was for money only, the issues of fact in which were triable to a jury and that as no equitable relief was sought, no appeal on law and fact was authorized. In view of the fact that there had been no trial on the merits in the Common Pleas Court, this Court, following Le Maistre v. Clark, 142 Oh St, 1, held that no matter what the nature of the issues, whether legal or equitable, there could be no appeal on law and fact. We, therefore, expressed no opinion as to the nature of the action. The judgment was reversed and the cause remanded for further proceedings.

In accordance with the mandate, The Leyman Corporation was made a party, and by pleading alleged that it was the beneficial owner of the cause of action, which was the basis of this action.

At the trial, following the remand, the parties agreed that the case should be heard on the evidence that had been introduced at the first trial, supplemented by some additional evidence. At the first trial, the defendant had moved to require plaintiff to elect as to whether it would proceed on the theory of an action at law or as in equity. The court overruled this motion. This motion was repeated at the second trial following the remanding of the case.

We are clearly of the opinion that the court did not err in overruling this motion. We know of no rule that requires a plaintiff to label his cause of action. Its classification is determined by the facts alleged.

Basing its contention on the overruling of this motion to require the plaintiff to elect, the defendant-appellant, however, contends that the court denied to it the right of trial by jury. The difficulty with the defendant-appellant's position in this regard is that it never demanded a trial by jury and went to trial, to the court without a jury without any protest because of the absence of a jury. By so doing it waived whatever right it may have had to have the issues submitted to a jury. **Bonewitz v. Bonewitz, 50 Oh St, 373.** We find this assignment of error to be without merit.

This is an action to enforce the liability for rent, taxes, etc., created by the express covenant of Piggly-Wiggly Stores, Inc., contained in a lease to it from Sam Matz and Max Matz, dated November 16th, 1922, for a term of 25 years, commencing January 1st, 1923. There is no doubt that conditioned on the lessors keeping their covenants, the lease bound Piggly-Wiggly Stores, Inc., as lessees to pay the rent, and there is no doubt that that obligation still persists unless subsequent events discharged it. It is claimed on this appeal that by virtue of certain modification of the terms of the lease in 1924, upon the occasion of the sale or assignment of the lease to William A. Goebel, Piggly-Wiggly Stores, Inc., was discharged from its obligation by operation of law.

There is no doubt the parties to a lease, as parties to any other contract, may agree to the substitution of a third person in the place and stead of one of the original parties, so as to impose the obligation upon the new party and release the original party. Such substitution and release, however, depends upon the intent which may be implied from conduct, but no implication can stand against an express declaration to the contrary. And that is the weakness of the appellant's position.

William A. Goebel imposed certain conditions in his offer to purchase this leasehold, which could be complied with only with the consent of the lessors. Piggly-Wiggly Stores, Inc., accepted this offer. The lessor agreed to waive the provision against assignment and to consent to the modifications so as to enable Piggly-Wiggly Stores, Inc., to assign the lease, and in this identical written agreement between the lessor and the assignee the lessors expressly reserved their right against Piggly-Wiggly Stores, Inc. The signature to this agreement was witnessed by an agent of Piggly-Wiggly Stores,

Inc., who had conducted the negotiations for the sale of this leasehold.

The trial court held that Piggly-Wiggly Stores, Inc., had not been released from its express covenant to pay rent. We are of opinion that the evidence supports that finding.

It is also urged that assuming that Piggly-Wiggly Stores, Inc., remained liable on its covenant, there is no liability on Piggly-Wiggly Corporation, a distinct corporation, organized under the laws of a different state from that under which Piggly-Wiggly Stores, Inc., was organized. And, of course, Piggly-Wiggly Corporation is not liable on the convenant of Piggly-Wiggly Stores, Inc., unless the evidence shows that it actually, expressly or by operation of law, or both, assumed such liability.

The facts are that Piggly-Wiggly Corporation organized under the laws of Delaware, was the owner of a system or method of operating grocery stores. Piggly-Wiggly Stores, Inc., a corporation under the laws of Virginia, was organized to operate grocery stores. It was licensed by Piggly-Wiggly Corporation to use its system, and had about twenty stores in which the system was used. Both corporations were organized on the same day. Piggly-Wiggly Corporation owned one-fifth of the voting stock of Piggly-Wiggly Stores, Inc., from the beginning, and at the time the lease which is the basis of this action was executed but finally acquired ninety-eight (98) per cent of such stock, which it owned at the time of the institution of the proceedings to dissolve Piggly-Wiggly Stores, Inc.

In 1928, The Kroger Grocery & Baking Company obtained control of Piggly-Wiggly Corporation, and thereby acquired control of Piggly-Wiggly Stores, Inc. Thereupon, all the directors of Piggly-Wiggly Corporation and Piggly-Wiggly Stores, Inc., resigned and their places were filled by nominees of The Kroger Grocery & Baking Company. At this same meeting of the directors of Piggly-Wiggly Corporation it was resolved to dissolve Piggly-Wiggly Stores, Inc., and Piggly-Wiggly Corporation officers were authorized to appoint proxies to vote the stock of Piggly-Wiggly Stores, Inc., owned by it in favor of such dissolution. It was also resolved at that meeting that Piggly-Wiggly Corporation should purchase all the assets of Piggly-Wiggly Stores, Inc., "and assume all of the obligations and liabilities to its creditors of every name and nature and assume performance of all contracts by which Piggly-Wiggly Stores, Inc. was bound."

In accordance with this resolution, steps were taken at once to dissolve Piggly-Wiggly Stores, Inc., under the laws of Virginia. All known matured debts were paid and the

members of the last board of directors became trustees of its assets for administration and distribution purposes. Thereupon, Piggly-Wiggly Corporation made an offer to the trustees to purchase the remaining assets of Piggly-Wiggly Stores, Inc., less a deduction for estimated debts, for the net sum of $1,376,254.16. The deductions mentioned were six in number, one of which was described as "net loss on rent contracts $181,232.25." The parties recognized that the amount assumed was indefinite.

This offer was accepted and a conveyance duly made in accordance therewith and the assets turned over to Piggly-Wiggly Corporation. While the transaction purported to be a sale for cash, as a matter of fact no cash was paid. This resulted from the fact that the purchaser owned 98% of the vendor's stock and was in effect buying from itself and on distribution would be entitled to receive back almost all that it had paid. The transaction was, therefore, limited to cross-entries on the books, with an arrangement under which Piggly-Wiggly Corporation supplied the money from time to time to the trustees of Piggly-Wiggly Stores, Inc., with which they satisfied the claims of the owners of the 2% of stock owned by others.

During the process of dissolution of Piggly-Wiggly Stores, Inc., and the acquisition of its assets, no mention was made of any liability arising out of the lease from Matz to Piggly-Wiggly Stores, Inc. It was not listed as a liability on the books of Piggly-Wiggly Stores, Inc., and it is conceded that the officers of Piggly-Wiggly Corporation had no knowledge of its existence. While a reserve was established to take care of loss on rent contracts, it is conceded that rent under this lease was not contemplated by that reservation. However, the reservation of this amount was in harmony with its intention to assume all the liabilities of Piggly-Wiggly Stores, Inc., expressed in the resolution passed at the meeting at which it was determined that Piggly-Wiggly Stores, Inc., should be dissolved. It is clear that Piggly-Wiggly Corporation intended to assume all the debts of Piggly-Wiggly Stores, Inc., and this was so understood and acted upon by the latter. It was given a deduction from the purchase price because of its agreement to pay the debts. It was mistaken as to the amount of those debts. In view of the breadth of its expressed intent to assume every obligation of whatever nature or description and in view of the fact that there was no recession from that position at any time, we are of the opinion that the trial court's finding that Piggly-Wiggly Corporation's actions in and about the dissolution of Piggly-Wiggly Stores, Inc., had the effect in law and equity of ren-

dering Piggly-Wiggly Corporation liable for the obligations of this lease, finds adequate support in the evidence of the conduct and expressed intention of the parties. The liability is based on a contract between Piggly-Wiggly Stores, Inc., and Piggly-Wiggly Corporation for the benefit of the creditors of Piggly-Wiggly Stores, Inc., which included the plaintiff. The liability of the promisor to the third-party beneficiary is well established in the law. In Section 136 of Restatement of the Law of Contracts, it is stated that "A promise to discharge the promisee's duty creates a duty of the promisor to the creditor beneficiary to perform the promise." And in Section 139, it is said: "It is. not essential to the creation of a right in a donee beneficiary or in a creditor beneficiary that he be identified when a contract containing the promise is made."

The facts in this case present a situation requiring the application of other principles leading to the same conclusion. When Piggly-Wiggly Corporation took possession of and title to the assets of Piggly-Wiggly Stores, Inc., which upon its dissolution had become a trust fund, without paying anything therefor, it became a constructive trustee for the benefit of all those having enforceable claims against Piggly-Wiggly Stores, Inc. In 54 Am. Jur., 446, it is stated that:

"The beneficiary of a trust who is a party to the contract giving rise to a trust may recover damages for its breach. He may, where he is not a party to the contract, recover as a third-party beneficiary in a jurisdiction where third-party beneficiaries can recover for breach of a contract. Also, where a trustee withholds which in conscience he should not be allowed to retain, the beneficiary may recover on the common counts, at least where the amount due him has been established and made certain and is immediately owing to him. But it has been held that a trust cannot be enforced as such by an action in common counts on an implied promise. A transferee of trust property, not protected as a bona fide purchaser for value and in good faith, may be proceeded against for money had and received."

The imagination of counsel has conjured up situations where many stockholders had received assets and where many unpaid creditors existed scattered over many states, and has pointed out many difficulties that would ensue if a single simple creditor were permitted to pursue a single stockholder. There is no doubt that when a debtor corporation dissolves and distributes its assets among its stockholders a difficult situation is usually presented to the creditors, notwithstanding the existence of all the remedies afforded by both law and equity. There is, however, no necessity for adding to those

difficulties. In this case there is just one creditor. It is not suggested that there is any other except possibly one other having a claim of less than $50.00. It is admitted that the defendant received assets worth many times the amount of the plaintiff's claim. Under such circumstances, we can think of no sound reason for requiring the plaintiff to file an action against Piggly-Wiggly Stores, Inc., which no longer exists and has no assets, before it will be permitted to proceed against the defendant that is under obligation to the plaintiff and has the assets with which to respond.

As one of the defenses urged here is that the proceedings under the laws of Virginia whereby Piggly-Wiggly Stores, Inc., was dissolved, constituted a bar to this action, it should be said that no matter upon which legal theory the defendant's obligation is based, the Piggly-Wiggly Stores, Inc., dissolution proceedings could have no effect upon it. The liability of a promisor upon his promise to a promisee to pay a creditor-beneficiary is in no way dependent upon the continued existence of the promisee. If the promisee is a natural person, his death would be no defense to an action by the creditor beneficiary against the promisor. The dissolution of a corporate promisee could have no greater effect. If defendant's obligation is placed on the basis of receipt of assets without consideration, whereby imposing upon it by operation of law the duty of a constructive trustee, the obligation is likewise unimpaired by the dissolution of the promisee. The fundamental reason applicable under both theories is that the plaintiff is not seeking to enforce a duty of Piggly-Wiggly Stores, Inc. It is seeking to enforce an independent obligation of the defendant. We look to the original obligation of Piggly-Wiggly Stores, Inc., as the measure and terms of defendant's obligation, and for no other purpose.

It is urged, however, that the defendant was released from this obligation by reason of the modifications in the terms of the lease at the time of the assignment by Piggly-Wiggly Stores, Inc., to Goebel. It is sufficient answer to this to say, as already noted, that there is ample support for the court's finding that these modifications were made at its request and with the express reservation of the liability of Piggly-Wiggly Stores, Inc., upon its covenant to pay rent and that Piggly-Wiggly Stores, Inc., knew of this reservation at the time and consented to it.

It is also urged that the plaintiff after default in payment of rent re-entered the leased premises in its own right and thereby effected a surrender of the lease which would have the effect of terminating the obligation to pay rent which would otherwise accrue in the future. The trial court found that

nothing that the plaintiff did or failed to do after taking charge of the premises was in violation of the terms of the lease, or released the original lessee, its successors and assigns from the obligations thereof. An examination of the record discloses that what the plaintiff did was for the purposes of preserving the property and minimizing the damage resulting from the default in the payment of rent and not for the purpose of accepting a surrender of the leasehold,— and it did not have that effect in law.

Finally, it is urged that the statutes of Virginia or Ohio, or both, bar the action. That the Virginia statute is inapplicable, in our opinion, is manifest from what has already been said as to the nature of the defendant's liability. The cause of action did not arise in that state. The breach occurred in Ohio. And as to any applicable Ohio statute, we are of the opinion that the unpaid balance of rent accrued well within the limitation imposed.

We find no error in the record, prejudicial to the appellant. The judgment is affirmed.

HILDEBRANT, PJ, MATTHEWS & ROSS, JJ, concur.