**UNITED STATES of America, Plaintiff-Appellant,**

v.

**The ADAMS BUILDING COMPANY, INC., et al., Defendants-Appellees.**

No. 75–1784.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 15, 1975.

Decided Feb. 9, 1976.

Dan Adams and Edward Witkowski were carpenters and small-scale builders who incorporated Adams, Inc., in 1958 to conduct their business in corporate form. Edward Witkowski and Margaret, his wife, jointly owned one-half of the corporate stock. Delores Adams, the wife of Dan Adams, owned the other one-half. Dan Adams was the president and Edward Witkowski the secretary of the corporation.

When Adams, Inc., was organized the shareholders sought to elect Subchapter S status for the corporation under the Internal Revenue Code of 1954.[1] Adams, Inc., apparently filed tax returns as a Subchapter S corporation. Subsequently, the government determined that Adams, Inc., had failed to satisfy the preconditions necessary to qualify as a Subchapter S corporation and thus became liable for taxes on the same basis as any other corporation.[2]

In April, 1959, about 15 months after the corporation was organized, the shareholders unanimously agreed that the corporation should be dissolved. On July 30, 1959, the Ohio Secretary of State issued a "Receipt and Certificate" certifying that the dissolution agreement had been filed on that date. It was agreed that an amount should be set aside for the payment of corporate income taxes based on the earnings of the corporation to the date of liquidation. For this purpose the sum of $500 was placed in escrow. The balance of the corporation's assets were distributed to the shareholders.

In March, 1962, Edward Witkowski as secretary and Dan Adams as president of Adams, Inc., executed IRS Forms 872 thereby purportedly extending until June 30,

Fredrick M. Coleman, U. S. Atty., Cleveland, Ohio, Scott P. Crampton, Gilbert E. Andrews, Jeffrey S. Blum, Chief, Appellate Section, Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Marston G. Bergman, A. Albert Perelman, Cleveland, Ohio, for defendants-appellees.

Before PHILLIPS, Chief Judge, MILLER, Circuit Judge, and MARKEY,* Judge.

WILLIAM E. MILLER, Circuit Judge.

The government has appealed from a judgment of the district court, Northern District of Ohio, in favor of the defendants involving taxes assessed against the defendant corporation ("Adams, Inc.").

---

* The Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, Washington, D. C., sitting by designation.

1. Subchapter S of the Internal Revenue Code of 1954, 26 U.S.C. § 1371 *et seq.*, allows shareholders in certain coporations to elect partnership-type taxation. The income of a corporation properly qualified under Subchapter S is generally taxed directly to the shareholders, and income tax liability is not imposed on the corporation itself.

2. It is well settled that taxes are due and owing on the date on which a tax return is due to be filed. *See, e. g., In re Able Roofing & Sheet Metal Co.*, 425 F.2d 699 (5th Cir. 1970). Subchapter S corporations are required to file information returns. 26 U.S.C. § 6037. If a Subchapter S election is determined to be defective, the information return is treated as a corporate return for purposes of the statute of limitations. *Leonhart v. Commissioner*, 27 CCH Tax Ct. Mem. 443 (1968); S.Rep.No.1983, 85th Cong., 2d Sess., 226 (1958).

344

1963, the statutory period for assessing taxes due from Adams, Inc., for the taxable periods ending December 31, 1958, and June 24, 1959. In 1963 and 1964, Dan Adams as president of Adams, Inc., executed additional "waivers" purportedly extending the period for assessment until June 30, 1964, and June 30, 1965, respectively. The waivers executed in 1964 provided that if a notice of deficiency was sent to the corporation on or before June 30, 1965, then the time for making an assessment was to be extended "by the number of days during which the making of an assessment is prohibited and for sixty days thereafter." During the period thus extended, the taxes in issue here were assessed against Adams, Inc. When the corporation failed to pay the taxes, the government initiated the present action in the district court.

The district court concluded (1) that the assessment of taxes was invalid because it was not made within the statutory period of three years for assessment and because the purported waivers were ineffective due to the fact that Adams, Inc., had ceased to exist before the first waiver was executed; and (2) that although the distributions in dissolution of the corporation may have left the corporation insolvent, the distributions were not fraudulent as to the government because "defendant corporation probably never had any assets to begin with, and that what the [shareholders] took back was no more than what they had put in."

■ The government first argues that the district court erred in holding that the waivers were ineffective to extend the statutory period for assessment. It is asserted that Adams, Inc., continued in existence for the purpose of winding up its affairs, including the payment of taxes, and that Dan Adams as president of the corporation had authority to execute the waivers on behalf of the corporation.

The authority of the agents of a corporation in the process of winding up its affairs is governed by state law. *United States v. Krueger*, 121 F.2d 842 (3d Cir.), *cert. denied*, 314 U.S. 677, 62 S.Ct. 185, 86 L.Ed. 542 (1941). Under the Ohio statutes applicable in this case, a corporation which has been dissolved "shall cease to carry on business and shall do only such acts as are required to wind up its affairs, but for such purpose it shall continue as a corporation." Ohio Revised Code § 1701.88(A). The time within which a corporation must wind up its affairs is not specifically prescribed. Ohio Revised Code § 1701.88(D) provides:

The directors of the corporation and their survivors or successors shall act as a board of directors in accordance with the regulations and bylaws until the affairs of the corporation are completely wound up. Subject to the orders of courts of this state having jurisdiction over the corporation, the directors shall proceed as speedily as is practicable to a complete winding up of the affairs of the corporation and, to the extent necessary or expedient to that end, shall exercise all the authority of the corporation. Without limiting the generality of such authority, they may fill vacancies, elect officers, carry out contracts of the corporation, make new contracts, borrow money, mortgage or pledge the property of the corporation as security, sell its assets at public or private sale, make conveyances in the corporate name, lease real estate for any term, including ninety-nine years renewable forever, settle or compromise claims in favor of or against the corporation, employ one or more persons as liquidators to wind up the affairs of the corporation with such authority as the directors see fit to grant, cause the title to any of the assets of the corporation to be conveyed to such liquidators for that purpose, apply assets to the payment of obligations, and, after paying or adequately providing for the payment of all known obligations of the corporation, distribute the remainder of the assets either in cash or in kind among the shareholders according to their respective rights and interests, and perform all other acts necessary or expedient to the winding up of the affairs of the corporation.

Thus, the directors and officers continue to perform their duties under the regulations

and bylaws of the corporation "until the affairs of the corporation are *completely* wound up." [emphasis added]

In construing § 1701.88, the court in *Chadwick v. Air Reduction Co.*, 239 F.Supp. 247 (N.D.Ohio 1965), stated at page 251:

Statutes extending the vitality of a dissolved corporation for purposes of suit are remedial in nature and should be given a liberal construction, 16 A Fletcher Cyclopedia Corporations § 8143; *American Oak Leather v. Peck*, Ohio B. T. A., 48 Ohio O. 291, 296, 108 N.E.2d 179, 183 (1951).

Applying this rule of construction, it appears that the affairs of a corporation should not be deemed to have been completely wound up while there remains a possibility that the government could make an assessment of taxes due for a period ending prior to dissolution of the corporation.

In *Monarch Mills v. Jones*, 59 F.2d 502 (4th Cir. 1932), the treasurer of a corporation executed tax waivers about two and one-half years after dissolution of the corporation but before expiration of the five-year statutory period then in effect. After noting that the South Carolina dissolution statute did not restrict the time within which directors or officers might perform any act that they deemed advisable in settlement of the corporate affairs, the court concluded that the execution of the waivers was incidental to liquidation and within the powers conferred by the state statute.

In *Wells-Elkhorn Coal Co. v. Commissioner*, 27 B.T.A. 198 (1932), *appeal dismissed*, 84 F.2d 1022 (6th Cir. 1936), the issue was whether five years was a reasonable time for closing the affairs of a dissolved corporation under a Kentucky dissolution statute which did not prescribe a specific time for winding up corporate affairs.[3] Tax waivers were executed in January, 1925, five years after dissolution, which purportedly extended the statutory period for making assessments for taxes due under returns filed on March 6, 1920, and March 15, 1921. In holding that the waivers were executed within a reasonable time after dissolution, the board stated at page 204:

The evident purpose of the statute is to enable a corporation to wind up its affairs, and among the very essential duties to be performed under such circumstances is the payment of debts, including outstanding taxes. . . . Certainly, it is not unusual for controversies of this character to continue for a much longer period [than two years]. In some cases the extension of time is at the request of the taxpayer, who desires that the fullest consideration be given to whatever issue has arisen, and, again, at the instance of the Commissioner, who, because of the pressure of business, is unable to give earlier consideration to a particular case.

In the present case, the corporate existence of Adams, Inc., continued for the purpose of winding up its affairs as long as there was a possibility that the government could lawfully make an assessment of taxes due from the corporation for the taxable periods ending December 31, 1958, and June 24, 1959, or at least until the expiration of any applicable statutory period for assessment, as extended by lawfully executed waivers. Dan Adams as president possessed authority necessarily implied to execute the waivers on behalf of Adams, Inc. *See United States v. Krueger, supra* ; *Commissioner of Internal Revenue v. Godfrey,*

---

**3.** The Kentucky statute provided:

Any corporation organized under this chapter may, by the consent in writing of the owners of the majority of its shares of stock, unless otherwise provided in the articles of incorporation or amendments thereto, close its business and wind up its affairs; and when any corporation expires by the terms of the articles of incorporation, or by the voluntary act of its stockholders, it may thereafter continue to act for the purpose of closing up its business, but for no other purpose; and it shall be the duty of the officers to settle up its affairs and business as speedily as possible; and they shall cause notice to be published, for at least once a week for four consecutive weeks, in some newspaper printed and published in the county, if any, of the fact that it is closing up its business; and all debts and demands against the corporation shall be paid in full before the officers receive anything.

50 F.2d 79 (2d Cir.), cert. den. 284 U.S. 653, 52 S.Ct. 32, 76 L.Ed. 554 (1931). We conclude that the waivers executed by Dan Adams were effective to extend the statutory period for assessment of taxes against Adams, Inc., and that the assessment of taxes by the government within the period, as extended, was lawful.

 The government also argues that the district court erred in holding that the corporate assets transferred to the shareholders of Adams, Inc., were beyond the reach of the government for purposes of satisfying the corporation's tax liability. It is asserted that the property and assets of Adams, Inc., constitute a trust fund under Ohio law for payment of its debts, including corporate tax liability.

The government's rights against a transferee of corporate assets are identical to those which other creditors would have under Ohio law. *Delia v. Commissioner,* 362 F.2d 400 (6th Cir. 1966). In *Delia,* this Court, citing *National Finance Co. v. Marlow,* 343 F.2d 125 (6th Cir. 1965), summarized the Ohio law as follows:

> "Ohio follows the rule that the property and assets of a corporation constitute a trust fund for the payment of its debts, and that an insolvent corporation which has ceased to do business can not by transfer of its property to one of its creditors in payment of antecedent debts create a valid preference to that creditor over its other creditors. When such a situation occurs, the property transferred may be traced and recovered unless the holder is a bona fide purchaser for value, and without notice."

This rule is applicable to the facts of the present case. Here, Adams, Inc., ceased to do business. All corporate assets except for $500 were transferred to the shareholders in preference over the government. The only "value" arguably given to the corporation by the shareholders was the surrender of their rights as shareholders. The surren-

der of such rights is not sufficient to enable the shareholders of Adams, Inc., to assume the status of bona fide purchasers for value. *See Leyman Corp. v. Piggly-Wiggly Corp.,* 90 Ohio App. 506, 103 N.E.2d 399 (1951).

The judgment of the district court is hereby modified and the action is remanded to that court for further proceedings consistent with this opinion.[4]

---

4. The judgment of the district court also determined that the defendants, Dan and Delores Adams, were individually liable to the government for certain taxes. No appeal was taken from this portion of the district court's judgment, and accordingly we have not dealt with it.