HINES ET AL., APPELLEES, *v.* AMOLE ET AL., APPELLANTS.

(No. 81 CA 42—Decided January 22, 1982.)

*Messrs. McCallister, Gibney & Stephan* and *Mr. Peter D. Stephan,* for appellees.

*Messrs. Cole, Acton, Harmon & Dunn* and *Mr. George W. Cole,* for appellants.

BROGAN, J. This is an appeal from a judgment of the Municipal Court of Xenia. In the court below, the action was filed by the purchasers of a dwelling house in Xenia to recover damages which they claimed to have sustained because of a false certification made by a pest control company. Initially the sellers of the house were joined as defendants, but they were dismissed before the trial. The trial was to a court referee, who made a finding in favor of the purchasers of the house, the appellees, against the pest control company and its employees, the appellants, for $2,600. Although the appellants objected to the report of the referee, judgment was awarded on the basis of the report. This appeal is from that judgment.

On April 17, 1979 the appellees, Jeffrey Hines and Theresa Hines, made an offer through Evergreen Realty, Inc. to purchase a dwelling at 1006 North Detroit Street, Xenia, from James Amole and Marguerite Amole. The offer was conditioned upon a satisfactory termite report at the buyers' expense. On April 20 the offer was accepted by Robert Hartley of Hartley Realty, the broker with whom the property had been listed for sale.

Subsequently Hartley Realty, acting as the agent of the sellers, ordered a termite inspection from Able Pest Control. On May 24, 1979 Able Pest Control made a report in three parts. The first part is a brief report, labeled "Conventional"; the second part is a drawing showing the outlines of the dwelling; and the third part

is a statement entitled "Attachment to Termite Certification Letters" which is a statement of limitation on the termite report. On the same day Able Pest Control issued an invoice for its services to Hartley Realty, calling attention to the graph and letter of limitations.

The appellees closed the purchase in June and moved into the house shortly after. In January 1980 for the first time they discovered some termite damage in the house. This action followed.

The sellers, Mr. and Mrs. Amole, bought the house, which is believed to be more than one hundred years old, around 1960. When they bought it they discovered some termite activity, which had been corrected, but they did not discover any termite damage so extensive as to require repairs. They lived in the house, with their two children, and were never bothered by any termite activity or damage. In 1973 they decided to remodel the kitchen. At that time they discovered once more that there was termite activity in the house. They then contacted Able Pest Control to treat the house for termites, which was done, and they entered into a contract with Able under the terms of which Able was to make annual inspections for five years without additional charge. The inspections were made and there has never been any evidence of termite activity in the house since 1973. Mr. Amole was aware of some slight damage to some of the windowsills as a result of the termite infestation in and before 1960. In 1973 he discovered that some wood lath had been eaten by termites, all of which wood lath he replaced. He also found possibly a half-dozen holes in wood joists in the basement which could have been caused by termites. None of said holes were larger in size than the diameter of a pencil. He did not feel that there was any structural damage to the property as a result of the termite activity and did not deem it necessary to make any extensive repairs. In fact, at that time he installed plywood over an area in a former kitchen closet. Although some evidence of termite activity was later discovered therein, he installed a standard full size refrigerator which remained in place without any further damage until the appellees bought the house.

I

"The court erred in rendering judgment in favor of the appellees on the basis of a report made by a referee who heard the evidence without the order of reference required by Civil Rule 53."

This action was tried to Nicholas A. Carrera, full-time referee of the Municipal Court of Xenia, but no order of reference had been made by the trial court in compliance with Civ. R. 53(A).

Rule 53(A) reads in pertinent part:

"(A) Appointment. The court may appoint one or more referees, who shall be attorneys at law admitted to practice in this state, to hear an issue or issues in any case in which the parties are not entitled to a trial by jury or in any case in which the parties consent in writing or in the record in open court, to submit an issue or issues to a court-appointed referee.

"* * *

"(C) Powers. The order of reference to a referee may specify or limit his powers and may direct him to report only upon particular issues or to do or perform particular acts or to receive and report evidence only and may fix the time and place for beginning and closing the hearings and for the filing of his report. Subject to the specifications and limitations stated in the *order,* the referee has and shall exercise the powers to regulate all proceedings in every hearing before him as if by the court and to do all the acts and take all measures necessary or proper for the efficient performance of his duties under the order * * *. (Emphasis added.)

"* * *

"(E) Report.

"(1) Contents and filing. The referee shall prepare a report upon the matters submitted to him by the order of

reference. He shall file the report with the clerk of the court and shall mail a copy to the parties. In an action on the merits of an issue to be tried without a jury, he shall file with his report a transcript of the proceedings and of the evidence only if the court so directs."

Although the transcript names Mr. Carrera as acting judge, on April 9, 1981, there was filed a journal entry entitled "Referee's Report and Recommendation" signed by the referee and by the judge. On April 27, 1981, appellants filed objections to the referee's report and specifically objected that the trial court had not entered an order of reference to a referee. The court notes the objections were filed outside the fourteen-day requirement for said objections. Civ. R. 53(E)(2).

Although the trial court may commit error by not fully complying with the procedural requirements of Civ. R. 53, that failure does not affect the jurisdiction of the trial court to hear and determine the action. *Eisenberg* v. *Peyton* (1978), 56 Ohio App. 2d 144 [10 O.O.3d 158]. That a failure to comply with Civ. R. 53 is not jurisdictional in nature is supported by the decision in *Lindsay* v. *Lindsay* (1957), 106 Ohio App. 146 [6 O.O.2d 409], in which the court held that the question of reference is not a jurisdictional matter, but one of procedure. *Id.* at 152. Appellants do not contend that the matter *sub judice* was one in which they were entitled to a jury trial. Their objection is there was no journal entry of reference. It is only in instances in which the trial court lacks jurisdiction that a judgment is void rather than voidable. Reversible error can only be attained by prejudice that affects the substantial rights of the complaining party. *Elser* v. *Parke* (1943), 142 Ohio St. 261 [27 O.O. 204]. The mere failure to properly journalize a referral to a referee does not produce prejudice *per se.*

The first assignment of error is thus not well taken.

## II

"The court erred in failing to furnish a statement in writing of the conclusions of fact found separately from the conclusions of law notwithstanding the oral motion for the statement made by counsel for the appellants in court at the conclusion of the trial, contrary to Civil Rule 52."

At the conclusion of the trial, counsel for the appellants requested, in open court, a written statement of the findings of fact and conclusions of law from the referee pursuant to Civ. R. 52. None has ever been furnished.

Civ. R. 52 reads:

"When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing or orally in open court requests otherwise before the journal entry of a final order, judgment, or decree has been approved by the court in writing and filed with the clerk of the court for journalization, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the *court* shall state in writing the conclusions of fact found separately from the conclusions of law.

"When a request for findings of fact and conclusions of law is made, *the court,* in its discretion, may require any or all of the parties to submit proposed findings of fact and conclusions of law; however, only those findings of fact and conclusions of law made by the court shall form part of the record.

"Findings of fact and conclusions of law required by this rule and by Rule 41(B)(2) are unnecessary to Rule 12, Rule 55 and Rule 56.

"An opinion or memorandum of decision filed in the action prior to judgment entry and containing findings of fact and conclusions of law stated separately shall be sufficient to satisfy the requirements of this rule and Rule 41(B)(2)." (Emphasis added.)

In *L.T.M. Builders* v. *Jefferson* (1980), 61 Ohio St. 2d 91 [15 O.O.3d 127], the matter was tried before a referee appointed by the court of common pleas. Following extensive hearings, the referee filed a report with the court. Before the court had acted on the referee's report, appellants filed "Objections to the Referee's Report," in which they sought, *inter alia,* "new findings of fact and conclusions of law." The trial court in a single document apparently intended to constitute both an announcement of decision and a judgment entry, overruled the appellants' objections, and entered judgment for the plaintiff in the recommended amount. No separate findings of fact and conclusions of law were made by the referee or the trial judge, nor did appellants further request separate findings following entry of judgment. Appellants argued that the objections to the referee's report served as a proper "request" under Civ. R. 52 which the court was obligated to follow.

Justice Paul Brown stated in *L.T.M. Builders:*

"The defect in appellants' argument is that the 'request' was directed to the *referee's report, not to the ultimate findings of the court.* The court could have directed the referee to make separate findings in accordance with appellants' objections and yet it would not have been bound to adopt those findings under the discretionary authority given the court in Civ. R. 53(E)(2). A proper 'request' under Civ. R. 52 should be unambiguously addressed to the court, not to some collateral matter, if the mandatory language of that rule is to be invoked. While the Civil Rules should be liberally construed to effectuate just results, this does not relieve a party from clearly alerting a court as to what the party seeks. To hold otherwise would require trial courts to speculate on the relief sought in a particular motion, notwithstanding its caption or content." (Emphasis added.) 61 Ohio St. 2d at 95.

If objections to a referee's report are not a proper request for separate findings of fact and law, then surely a request directed solely to the referee is not a request directed to the *court* as required by Civ. R. 52.

Appellants contend the recent case of *Crawford Carpet* v. *Ozanne Constr. Co.* (Dec. 15, 1981), Cuyahoga App. Nos. 43154 and 43155, unreported, is dispositive of the issue. The court therein clearly stated the *trial court's* failure to comply with the mandatory provisions of Rule 52 was reversible error. Here the appellants did not request the trial court to make separate findings of fact and law, and thus they can hardly object to the trial court's failure to do so.

The second assignment of error is thus overruled.

### III

"The court erred in rendering judgment for the appellees on the basis of the following findings of fact which were against the weight of the evidence."

Although a verdict or finding is contrary to the evidence, is unsupported thereby, or is against the weight of the evidence, a judgment will not be disturbed on such ground unless such basis or predicate is made to appear manifestly and clearly. *Rosenthal* v. *Sutton* (1877), 31 Ohio St. 406; *Henkle* v. *Salem Mfg. Co.* (1883), 39 Ohio St. 547.

The weight to be given to the conclusions of the triers of facts is coupled with the usual presumption which must be indulged in favor of the correctness of the judgment and proceedings under review, and in determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. *Karn* v. *Karn* (Franklin App. 1937), 25 Ohio Law Abs. 501.

Reversal cannot be had on the ground that the judgment is against the weight of

the evidence except as a matter of law. *Spangler* v. *Brown* (1875), 26 Ohio St. 389. It follows that a judgment will not be reversed on this ground merely because the evidence sustaining it is open to suspicion or does not impress the reviewing court, or the court is not satisfied that such verdict is right, or would have rendered a different verdict or decided differently if it had heard the case in the first instance. *Harrison* v. *King, Carey & Howe* (1859), 9 Ohio St. 388. Generally, a judgment will not be reversed as against the weight of the evidence if it is supported by any competent, credible evidence which goes to all the essential elements of the case. *Chicago Ornamental Iron Co.* v. *Rook* (1915), 93 Ohio St. 152.

Plaintiffs-appellees contended in the trial court that the certification made by the appellants was false and that they suffered damages thereby. The certificate is as follows:

"The understructure of the building(s) as noted above has been inspected for termites by a qualified Termite Inspector.

"Based on careful visual inspection of accessible areas and on sounding of accessible structural members, there is no visible evidence of termite infestation or other wood destroying insect infestation in the above subject property, and, if such infestation previously existed, it has been corrected and any damage due to such infestation has also been corrected or alternately has been fully disclosed as follows:

" No visible evidence of termite activity

" 5-24-1979       /s/ Paul K. Ormes"
DATE                INSPECTOR

Appellee, Jeffrey Hines, testified he first became aware of termite damage some eight months after purchase of their home. Appellee Hines testified he was removing linoleum in the entry way when he uncovered damage. He also testified that he discovered termite damage in the kitchen area when he removed the linoleum and some kitchen cupboards. It is clear that this damage discovered by the appellee could not have been discovered by careful visual inspection of "accessible" areas as the discovery took place only after removal of the linoleum and the cupboards. Appellee testified he observed termite damage in the basement in the floor joists. He observed this with the use of a flashlight after he saw the damage in the entry way and kitchen.

Gary Moore, a termite pest control technician with eight years experience, testified he examined appellees' house in February 1980. Mr. Moore testified he saw visible evidence of termite damage in the basement area where termites had been and had done structural damage to the wood. He testified he had no trouble in locating the termite damage and it was located in several areas of the basement. He testified he found no active termite infestation.

Tom Charlton, a general contractor of ten years experience, testified he inspected appellees' house in January 1980. He testified that he had observed termite damage in the basement of appellees' house, that the cost of repair of the damage would be approximately $2,900, that he could see the damage in the basement without difficulty, and that while the damage could be from dry rot, in his opinion the damage in the basement was due to termites.

Appellant Paul Ormes testified he had been a pest exterminator for nineteen years. He further testified he had examined the basement in May 1979 and used a flashlight to conduct the examination, he was aware the house had been previously treated for termites, he had treated the house for termites in 1973 for the Amoles, and he had made further inspection after 1973 for the Amoles and had found no termite activity. Ormes was asked whether he determined whether there had been termite damage in the house, and he stated that he had determined whether there had been infestation, but had not determined whether

damage or structural damage had occurred. Appellant testified he had not examined for termite damage even though the certificate he and his company provided certified "*damage due to such infestation has also been corrected or * * * disclosed.*" He stated the purpose of the inspection was to find *active* termites. (Emphasis added.) The evidence appears uncontroverted there was no active termite infestation at the time of the certificate and sale of the property.

On cross-examination, Ormes testified the photographs introduced as exhibits showing the foyer, kitchen, and basement areas did show some termite activity that had resulted in some damage. He testified he believed no structural damage existed, however.

James E. Amole testified that when he purchased the home in 1960 he discovered termite infestation between the basement door and the hallway door. He stated it was about seven feet across and two feet up the wall to the basement. He testified there had been damage in the basement area to the two by fours holding up the stairs.

In sum, the testimony establishes that Ormes felt that he was certifying no present termite activity, but that he did not concern himself with an adequate inspection for termite damage. The testimony adequately supports proof of some termite damage. Tom Charlton testified it was structural damage, and defendant James E. Amole felt it was not of structural proportions. It is clear that appellants failed to disclose the termite damage present in the basement. It is also clear that had an adequate inspection been performed in the basement area, it is likely the damage under the foyer floor would have been discovered.

In any event, there was probative evidence that the certificate issued by Ormes and Able Pest Control was false and damages were suffered by the purchasers of the property, the appellees. There being probative and competent evidence sufficient to support the trial court's judgment, the third assignment of error is overruled.

## IV

"The judgment of the court was contrary to law because it was based on a certification made by the appellants to and at the request of a person other than the appellees, and there was no contractural or other relationship between the appellees and the appellants."

On April 19, 1979, appellees entered into a contract to purchase real estate from James Amole and Marguerite Amole. One of the conditions of the contract was that a satisfactory termite inspection report be issued on the house. This was to be paid for by the buyers. Appellees testified that the sellers' broker arranged for the termite inspection. The inspection was performed by appellants on May 24th and appellees paid James Amole $18 by check for the inspection. It is obvious that while appellees did not personally contract with appellants, the inspection was conducted at appellants' instance for appellees' benefit. Indeed the sale was conditioned on proof of a satisfactory termite inspection.

In order that a third person may enforce a promise made for his benefit, it must appear that the contract was made and entered into directly or primarily for the benefit of such third person. *Cleveland Metal Roofing & Ceiling Co.* v. *Gaspard* (1914), 89 Ohio St. 185. An incidental benefit to the third person is not sufficient to give him a right of action. Thus, a mere stranger cannot intervene and claim by action the benefit of a contract between other parties. *Blunk* v. *Dennison Water Supply Co.* (1905), 71 Ohio St. 250.

A third person for whose benefit a contract is made need not be named therein. *Emmitt* v. *Brophy* (1884), 42 Ohio St. 82. It is sufficient if the third person is in the contemplation of the parties. *Leyman Corp.* v. *Piggly-Wiggly Corp.* (1951), 90 Ohio App. 506 [48 O.O. 184]. In

the matter *sub judice* the parties to the contract to purchase clearly specified the termite inspection was for the benefit of the buyers. The appellees were clearly third party beneficiaries to the contract between appellants and the sellers.

The fourth assignment of error is overruled.

## V

"The judgment of court was contrary to law because there was no proof of the existence of several of the elements required to establish an action for misrepresentation."

In Ohio an action for damages caused by misrepresentation cannot ordinarily be maintained without proof of actual fraud or such gross negligence as amounts to fraud. The representation must be not only false but fraudulent, *Parmlee* v. *Adolph* (1875), 28 Ohio St. 10.

A corollary to the principle that to maintain an action for misrepresentation, fraud must be proved is the principle that for a false representation to have the requisite fraudulent intent to make it actionable, it must have been intended that the representation should be acted upon by the party complaining of fraud. *Mason* v. *Moore* (1906), 73 Ohio St. 275. If it does not appear that representations were made to the complainant, or with any expectation that they would come to his knowledge, or with any belief or reason to believe that they would induce him to act on the matter in question, there is no liability, because of lack of privity. *Wells* v. *Cook* (1865), 16 Ohio St. 67.

Here, it is clear that appellants were guilty of at least gross negligence in the certification they provided the Amoles. Paul Ormes testified his intent was to search for termite activity not damage, yet he certified no damage existed except what he disclosed which was no disclosure. Appellants contend the lighting was bad in the basement and thus damage by termites could not be seen. Surely one who obtains a termite inspec-tion can expect a more thorough inspection than a cursory examination. Appellees obviously placed importance on the presence of termites or their damage or they would not have relied upon the certification or conditioned their purchase of the house on a successful inspection.

The last assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

PHILLIPS and WILSON, JJ., concur.