DECISION AND JUDGMENT ENTRY
This is an appeal from the decision of the Gallia County Court of Common Pleas granting appellee's motion for summary judgment. The lower court found that there was no writing evidencing any contractual obligation owed to appellant. Therefore, the six-year statute of limitations for bringing contract claims not in writing, pursuant to R.C. 2305.07, barred appellant's claim.
Appellant argues there was an enforceable written contract between appellant and appellee. Appellant also argues, in the alternative, that he was an intended third-party beneficiary to an agreement entered into between appellee and the Ohio Department of Transportation.
We find appellant's arguments to be without merit and affirm the judgment of the trial court.
STATEMENT OF THE CASE AND FACTS
Our review of the record reveals the following facts pertinent to the instant appeal.
Defendant-Appellee John E. Matthews, Sr., was the owner of Abie's Auto Systems, Inc. (AAS), a company located in Gallia County, Ohio, primarily engaged in the business of purchasing wrecked automobiles and selling used automobile parts.[1]
In August 1990, appellee was contacted by representatives of the Ohio Department of Transportation (ODOT) because it was determined that AAS was in the way of the planned improvement of U.S. Route 35 in Gallia County. ODOT offered to reimburse appellee for relocating AAS, which involved the relocation of thousands of wrecked automobiles and automobile parts.
In arriving at a reimbursement figure, ODOT requested, and received bids from, at least four moving companies. One such bidder was Plaintiff-Appellant Landis K. Wandling, doing business as P A Enterprises.
Appellant submitted a document entitled "Bid To Move And Clean Up Abies' [sic] Auto Systems" (bid). The bid detailed the cost of moving the various categories of property — ranging from one thousand five hundred wrecked automobiles to thirty truck loads of motor blocks. The aggregate proposal totaled $185,000. The bid was not addressed to anyone, showed no date, and was not signed by appellee, although appellant's initials appeared at the bottom of the document.
ODOT did not directly enlist the services of any of the movers that submitted bids. Instead, it used these bids to arrive at a reimbursement figure to offer appellee.
ODOT offered to reimburse appellee $210,000 for relocating AAS. Appellee agreed to the amount.
It is not contested that ODOT and appellee entered into a written agreement whereby appellee was to relocate AAS, and ODOT was to reimburse appellee $210,000. There are two documents, in addition to appellant's bid, which are relevant to this matter.
First, is a document that reduces to writing the agreement entered into between ODOT and appellee at a meeting held July 31, 1990 (the ODOT Agreement). This document was signed by appellee on August 7, 1990, and signed by an ODOT representative on August 20, 1990. The ODOT Agreement details the amount ODOT would reimburse appellee, the date on which the relocation was to be completed, as well as various other terms relating to the relocation. There is no mention whatsoever of a third party to this contract. Rather, ODOT, as evidenced in this document, looked solely to appellee for the completion of the relocation of AAS.
Second, is a document entitled "General Moving Specifications" (the Specifications Agreement). This document was also signed by appellee on August 7, 1990, and signed by an ODOT representative on August 20, 1990. This document details what ODOT expected of appellee in relocating AAS. Of particular focus by appellant is the following excerpt. "The move is to start on the agreed date between [ODOT], [appellee], and the successful bidder." There is no mention in the document of who, if anyone, was the "successful bidder."
Ultimately, AAS was relocated in accordance with the terms set forth in the ODOT Agreement and the Specifications Agreement. Appellee was paid the $210,000 as per the ODOT Agreement.[2] Appellant received no payment pursuant to this agreement.
On August 26, 1999, appellant filed a complaint against appellee and ODOT in the Gallia County Court of Common Pleas.[3] Appellant contends in his complaint that he was the "successful bidder" referred to in the Specifications Agreement. Thus, it is appellant's contention that the bid submitted to ODOT was an enforceable written contract between appellant and appellee. In the alternative, appellant argues that his bid was incorporated into the written agreement between ODOT and appellee, thereby rendering him an intended third-party beneficiary to that agreement. Appellant alleges that he performed all the work necessary to relocate AAS.[4]
On October 4, 1999, appellee filed an answer, asserting, inter alia, that appellant's "Complaint [was] barred by the applicable statute of limitations."
On June 30, 2000, appellee filed a motion for summary judgment with the lower court, arguing that there was no writing evidencing any contractual obligation owed to appellant by appellee. Therefore, appellee maintains that the six-year statute of limitations for bringing contract claims not in writing, pursuant to R.C. 2305.07, should bar appellant's claim.
On August 3, 2000, appellant responded, essentially reasserting the facts and arguments presented in his complaint.
On August 8, 2000, the trial court issued its decision, granting appellee's motion for summary judgment. The lower court found that there was no writing evidencing any contractual obligation owed to appellant by appellee. "[Appellant] did not submit a valid bid nor was the bid a contract to move. The only thing the figures were used for was to determine an amount that the State of Ohio would pay [appellee] for the move." Therefore, R.C. 2305.07 served to bar appellant's complaint.
On August 18, 2000, appellant filed a timely appeal assigning the following error for our review.
ASSIGNMENT OF ERROR I:
 THE COURT ERRED IN DETERMINING THAT DEFENDANTS MATTHEWS SR. AND ABIE'S AUTO SYSTEMS, INC. WAS [sic] ENTITLED TO SUMMARY JUDGMENT.
ANALYSIS
Appellant asserts in his sole assignment of error that the trial court erred in granting appellee's motion for summary judgment pursuant to Civ.R. 56. We disagree.
Appellate review of a trial court's ruling granting a motion for summary judgment is de novo. See Wille v. Hunkar Laboratories, Inc. (1998), 132 Ohio App.3d 92, 724 N.E.2d 492; accord Lee v. SunnysideHonda (1998), 128 Ohio App.3d 657, 716 N.E.2d 285. Accordingly, we must evaluate, wholly independent of the trial court's determination, whether appellee's motion for summary judgment should have been and was properly granted.
The standard of review in summary judgment cases is well settled. The Supreme Court of Ohio explained the appropriate analysis of such matters as follows.
 Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor.
Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-70,696 N.E.2d 201, 204. We will address each of these three elements in turn.
There is no genuine issue of material fact in the case sub judice. There is no dispute as to what the controlling documents are in this case. Rather, the parties differ as to the legal significance to be assigned to these documents. The latter is solely an issue of law.
R.C. 2305.07 provides the following. "[A]n action upon a contract not in writing, express or implied, * * * shall be brought within six years after the cause thereof accrued." R.C. 2305.07. The facts surrounding the agreement at issue in the present matter occurred in and around 1990. Thus, whether appellant is able to establish the existence of a written contract between the parties is dispositive because if no such written agreement existed, a claim involving a contract not in writing would be time-barred by R.C. 2305.07. Accordingly, we must analyze the legal effect of the pertinent documents and determine whether there is an enforceable written contract between appellant and appellee, or whether there is a written third-party-beneficiary agreement involving appellant. We find neither.
We first address whether appellant's bid constituted an enforceable contract between appellant and appellee. Essential to the formation of an enforceable contract, written or otherwise, are the elements of a meeting of the minds, an offer, acceptance, and consideration. See Noroski v.Fallet (1982), 2 Ohio St.3d 77, 442 N.E.2d 1302; accord Ford v. TandyTransp., Inc. (1993), 86 Ohio App.3d 364, 620 N.E.2d 996. A valid contract is formed if the parties manifest a "distinct and common intention which is communicated by each party to the other." McCarthy,Lebit, Crystal Haiman Co. L.P.A. v. First Union Mgt., Inc. (1993),87 Ohio App.3d 613, 622 N.E.2d 1093.
The bid appellant submitted evidences none of the aforementioned basic elements of a contract. A reading of the document evidences no intention between the parties to be bound in contract; the bid was not addressed to anyone, it showed no date, and it was not signed by appellee, although appellant's initials do appear at the bottom of the document. At most, appellant's bid constitutes a written offer, not a written contract.
We next turn to whether appellant's bid was incorporated into the written agreement between ODOT and appellee, rendering him an intended third-party beneficiary to that contract.
In order that a third person may enforce a promise made for his benefit, it must appear that the contract was made and entered into directly or primarily for the benefit of such third person. * * * An incidental benefit to the third person is not sufficient to give him a right of action. Thus, a mere stranger cannot intervene and claim by action the benefit of a contract between other parties.
Hines v. Amole (1982), 4 Ohio App.3d 263, 448 N.E.2d 473 (citations omitted); see Blunk v. Dennison Water Supply Co. (1905), 71 Ohio St. 250,73 N.E. 210. Thus, in the instant matter, it must be shown that appellee and ODOT had contemplated appellant as a beneficiary when they reduced their agreement to writing. See Leyman Corp. v. Piggly-Wiggly Corp. (1951), 90 Ohio App. 506, 103 N.E.2d 399 (explaining that it is sufficient to establish one as an intended third-party beneficiary if the third party was in the contemplation of the parties at the time of formation of the contract).
The record in the case sub judice clearly establishes that ODOT solicited a bid from appellant, as well as other movers, solely to aid ODOT in its calculation of a reimbursement offer to appellee. The ODOT Agreement makes no mention of any third party. The Specifications Agreement states that "[t]he move is to start on the agreed date between [ODOT], [appellee], and the successful bidder." However, there is no mention in the document of who, if anyone, was the "successful bidder," let alone that appellant was the successful bidder. The record reflects that there were at least three other movers that bid on the move. Thus, from this agreement, the successful bidder, if there was indeed one, could have been any of four companies.
The fact that appellee ultimately enlisted appellant's services in the performance of this relocation does not resolve this issue. What must be shown here, to survive appellee's motion for summary judgment, is that appellee and ODOT contemplated appellant as a third-party beneficiary at the time that they contracted. This is nowhere evidenced in these writings.[5]
Accordingly, we find, based on the foregoing de novo review, that, having construed the evidence most strongly in appellant's favor, reasonable minds can come to but one conclusion and that conclusion is adverse to appellant; the lower court did not err in granting appellee's motion for summary judgment.
Therefore, appellant's sole assignment of error is OVERRULED and the judgment of the Gallia County Court of Common Pleas is AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that appellee recover of appellant costs herein taxed.
The Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the Gallia County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.
David T. Evans, Judge.
Abele, P.J., and Harsha, J.: Concur in Judgment and Opinion.
[1] Jane Doe, Spouse of John E. Matthews, Sr.; Abie Auto Systems, Inc.; John Matthews, Jr.; and Patty Ross were named as defendants in the complaint. However, the only parties that filed briefs with this Court were Plaintiff-Appellant Landis K. Wandling, dba P A Enterprises, and Defendant-Appellee John E. Matthews, Sr.
[2] The $210,000 was paid to appellee as follows: (1) $60,000 was paid upon completion of the relocation, as detailed in the ODOT Agreement; and (2) $150,000 was paid pursuant to a "Relocation Assistance Program Commercial Claim," filed by appellee after a post-move inspection and certification, which were also required by the ODOT Agreement.
[3] This was the second time appellant brought such an action against ODOT and appellee. On September 12, 1991, appellant filed a complaint setting forth substantially the same arguments as set forth in the August 26, 1999 complaint here at issue. However, appellant dismissed this case on August 20, 1992.
[4] There also is discussion by both parties in their briefs of a second oral contract wherein appellant was to crush and sell automobiles belonging to appellee. Apparently, both parties have agreed that this oral contract was in existence and plays no part in the disposition of the instant matter.
[5] Moreover, there is the following testimony of Mr. Gibson, a representative of ODOT, taken from his deposition relating to appellant's first lawsuit in this matter. See supra note 3.
 Q. Did you have a contract with Wandling or P A Enterprises to submit a bid for the moving of personal property from Matthews' property?
A. No.
 Q. Did you, in coming about the $210,000.00 figure in any way, shape or form the bid submitted by Wandling and/or P A Enterprises?
A. No.
 Q. Did the Department of Transportation have any sort of contract whatsoever with P A Enterprises and/or Wandling verifying this move?
A. No.