Appellant William H. Stewart III appeals from two judgments of the Montgomery County Common Pleas Court, Domestic Relations Division. Finding that both appeals involved the same facts, parties, and trial court case number, this court consolidated the appeals sua sponte on Dec. 4, 1997.
In his pro se brief to this court, William advances ten assignments of error containing forty-three issues for our review. His arguments allege prejudicial error in various lower-court proceedings and rulings, culminating in the trial court's final judgment and decree of divorce issued on August 15, 1997. The historical facts underlying the present dispute are relatively simple. The parties married on July 14, 1984. Appellee Cathy L. Stewart filed a complaint for divorce on November 26, 1996. Thereafter, the trial court issued a temporary order on January 6, 1997, granting Cathy temporary custody of the parties' minor child and requiring William to pay temporary child support and temporary spousal support. William, acting pro se, subsequently sought and received a hearing on the temporary support issue. A magistrate conducted the hearing and issued a February 11, 1997, order finding the temporary support "fair and reasonable."
Thereafter, William filed a litany of pro se motions, including inter alia (1) a motion for Civ.R. 60(B) relief and a hearing, (2) a motion in limine, (3) a motion to compel discovery, (4) a motion for a "court appointed expert for asset valuation," (5) a motion to strike, (6) a motion for "defendant party joinder," and (7) a motion to set aside the magistrate's order. The trial court denied each of these motions. Following a hearing on Cathy's divorce complaint, at which William again represented himself, the trial court issued a final judgment and decree of divorce. Among other things, the decree named Cathy as residential parent of the parties' child, required William to pay $325 as child support, awarded Cathy one-half of the value of William's PERS pension fund accumulated during the marriage, and awarded Cathy $1,000 toward her attorney fees. The decree did not award either party spousal support.
William subsequently filed a timely notice of appeal in case number CA 16769 from the trial court's final judgment and decree of divorce. This court on December 4, 1997, sua sponte
consolidated the appeal with William's earlier appeal in case number CA 16649 from the trial court's June 8, 1997, entry and order disposing of his various motions. In an August 25, 1997, decision and entry, this court also allowed William to amend his premature notice of appeal in case number CA 16649 to include an appeal from the trial court's entry of a final divorce decree. Additionally, the entry granted William permission to file a brief not exceeding thirty-five pages. In response, William has presented this court with a seventy-four-page brief, excluding the table of contents, table of cases, authorities cited, and appendices.
Although the "argument" portion of William's brief is thirty-five pages long, his brief also includes a seven-page recitation of his assignments of error, a ten-page presentation of issues for our review, a one-page statement of the case, and twenty-one pages of facts. These portions of William's brief arenot excluded from the page limits found in Loc.App.R. 2.2 of the Second District Court of Appeals. Given William's decision to file a brief nearly three times longer than the twenty-five pages typically allowed — and more than twice as long as the thirty-five pages this court specially authorized — we are tempted to base our opinion on only the first thirty-five pages. Doing so, however, would leave this court mired amidst William's recitation of the facts. Consequently, we will consider William's loquacious arguments notwithstanding his failure to comply with this court's prior decision and entry.
In so doing, however, we note that William's verbosity and his presentation of forty-three different arguments only make it more difficult for this court to ascertain which issues truly merit close judicial scrutiny. Rather than stressing those issues legitimately warranting appellate review, William has contested virtually every sentence of every ruling made by the trial court. Such conduct lessens William's credibility before this court, as we find it unlikely that the trial court erred every time it ruled. In any event, we proceed now to the following ten assignments of error[1]:
 I. "The trial court erred as a matter of law and prejudiced Defendant['s] rights when it failed to issue an order of reference for hearing before the magistrate on Defendant's request for hearing following the trial court's `Temporary Order,' and the trial court abused its discretion when it failed to respond to objections or consider modification of the `Magistrate Order' prior to or at final hearing."
In his first assignment of error, William contends that no order of reference or automatic reference authorized a magistrate to conduct the February 4, 1997, hearing regarding temporary child and spousal support. Consequently, he argues that the hearing is "void." William also alleges prejudice because Loc.R. 4.21(A) of the Montgomery County Common Pleas Court, Domestic Relations Division, prohibits objections to a magistrate's pre-decree temporary support order. Finally, William contends the trial court erred by failing to respond when he objected to the magistrate's temporary support order.
We find these arguments meritless. At the outset, we note that William appeared before the magistrate and participated in the hearing without objection. After the hearing, the magistrate issued a ruling on February 11, 1997, and found the previously ordered temporary child and spousal support proper. The magistrate's order included the following notation: "This Magistrate Order pursuant to Civ.R. 75(M) shall be effective upon filing and shall not be subject to objections by either party." Nevertheless, William responded with a "Motion to Set Magistrate's Order Aside." In his motion, William raised five objections to the magistrate's ruling, none of which mentioned the absence of an order of reference. The trial court overruled William's objections in a March 28, 1997, decision and judgment and denied his motion to set aside the magistrate's order. William then filed a Civ.R. 60(B) motion to vacate the trial court's journal entry overruling his objections. That motion also failed to mention the absence of an order of reference. The trial court subsequently overruled William's Civ.R. 60(B) motion, along with numerous other motions, in a June 8, 1997, entry and order. In its ruling, the trial court stated:
 "Defendant's motion for oral evidentiary hearing to vacate the Court's decision and judgment pursuant to Civ.R. 60(B)(5) is denied. Civ.R. 60(B) allows a court to relieve a party from a final judgment, order or proceeding for several reasons which are listed thereunder. The Decision and Judgment to which Defendant objects is not a final judgment. Defendant was granted a Rule 75 hearing which resulted in a Magistrate Order containing a pre-decree support order. Defendant filed objections thereto, and the Court accepted those objections and issued a Decision and Judgment. By doing so, the Court gave Defendant a level of review to which he was not entitled pursuant to Local Rule 4.21(A), which states that `A Magistrate Order containing a pre-decree support or visitation order issued pursuant to a hearing shall be effective upon filing and shall not be subject to objections by either party.' In sum, Defendant has been given the benefit of the doubt once, and Civ.R. 60(B) is not applicable to the Decision and Judgment filed March 28, 1997."
In response, William filed yet another motion on July 8, 1997, objecting to the trial court's denial of his Civ.R. 60(B) motion and other rulings. In paragraph eleven of his motion, William objected to the magistrate conducting the temporary support hearing five months earlier without an order of reference. Shortly after William filed this motion, the trial court issued its final judgment and decree of divorce.
Based upon the foregoing facts, we find William's assignment of error unpersuasive. In Hines v. Amole (1982), 4 Ohio App.3d 263, this court recognized that "the question of reference is not a jurisdictional matter, but one of procedure." Id. at 265, citingLindsay v. Lindsay (1957), 106 Ohio App. 146. We also reasoned: "It is only in instances in which the trial court lacks jurisdiction that a judgment is void rather than voidable. Reversible error can only be attained by prejudice that affects the substantial rights of the complaining party. * * * The mere failure to properly journalize a referral to a referee does not produce prejudice per se." Id.
In light of Hines, supra, we cannot accept William's assertion that the hearing and magistrate's order were "void." To the contrary, the hearing and order were at most "voidable" if William promptly had brought the order-of-reference issue to the trial court's attention and demonstrated prejudice. In the present case, however, William participated in the hearing and even failed to raise the issue in his initial motion to set aside the magistrate's order. Furthermore, we see no prejudice to William. In his appellate brief, William contends prejudice exists because the magistrate's findings were "binding" upon him and not subject to objections. As we noted above, however, the trial court did entertain William's five objections to the magistrate's ruling. William cannot demonstrate prejudice flowing from the non-reviewability of the magistrate's order when, in fact, the trial court did review the order. Accordingly, we overrule his first assignment of error.
 II. "The trial court erred as a matter of law and abused its discretion by not ordering a transcript copy before it adopted a decision against the manifest weight of the evidence in the proceedings before the magistrate, thereby prejudicing Defendant rights conferred by law."
In his second assignment of error, William argues that the trial court erred by failing to order a transcript when considering his objections to the magistrate's temporary support ruling. William contends that because he challenged the magistrate's order as being against the manifest weight of the evidence, the trial court was obligated to order a transcript of the proceedings before overruling his objections. In William's view, the trial court bore the obligation to order a transcript because his motion asked the court to set aside the magistrate's ruling and requested "that the Court order a complete transcript of the proceedings before the magistrate for its review."
We find William's argument meritless. In In re Morehead
(1991), 75 Ohio App.3d 711, this court noted that a trial court abuses its discretion when it overrules objections to a magistrate's report without first reviewing a transcript that isordered and provided by the objecting party. Contrary to William's argument, a trial court is not required to order a transcript on its own at the request of an objecting party.
In support of his position, Williams relies largely upon Eashv. Eash (1984), 14 Ohio App.3d 298. In that case, the Wayne County Court of Appeals recognized that "[t]he party objecting to a referee's report bears the burden of providing the trial court with a transcript of the proceedings before the referee to support the objections to that report." Nevertheless, the court noted that Civ.R. 53 provided no procedure for obtaining a transcript. Given this fact, the court determined that a party could include a request for a transcript in its objections, and the decision whether to order a transcript rested within the trial court's sound discretion. Id. at 298-299. The court then held that a court's refusal to order a transcript, without any articulated reason, would constitute an abuse of discretion. Id. at 299. In reaching this conclusion, the Eash court relied largely upon then-existing Civ.R. 53(E)(1), which authorized the trial court to order a transcript.
In the years following Eash, however, circumstances have changed. As the court recognized in Schindler v. Schindler (Aug. 9, 1990), Defiance App. No. 4-88-18, unreported, Eash was decided in 1984 before amendments to Civ.R. 53, and "it is now clear that the objecting party must support the objection with a copy of all relevant portions of the transcript from the referee's hearing * * *." Civ.R. 53(E)(3)(b) now provides that "[a]ny objection to a finding of fact shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that fact * * *." In the present case, however, William's objections are not supported by a transcript of all the evidence. To the contrary, they are supported only by a request for the trial court to provide itself with a transcript. This request, however, conflicts with Mont. D.R. Rule 4.53(D), which states that "[w]hen a transcript of proceedings before a Magistrate is ordered * * * for the Court's consideration in ruling upon objections, the objections shall state that a transcript of the proceedings has been ordered." William's request also conflicts with Mont. D.R. Rule 4.55, which states that "[i]f a party intends to object or appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, that party shall provide a transcript of all evidence relevant to such finding or conclusion. The party shall file a praecipe with the Clerk of Courts for a full or partial transcript."
Given the existence of both civil and local rules outlining a procedure for obtaining a transcript and placing the burden for doing so upon the objecting party, we find Eash distinguishable. Having concluded that the trial court bore no obligation to provide its own transcript, we overrule William's second assignment of error.
III.
 "The trial court erred as a matter of law, abused its discretion, and prejudiced Defendant['s] rights when it did not judicially review evidence, take additional evidence, testimony, or order [a] hearing following the proceeding before the magistrate."
In his third assignment of error, William claims the trial court erred by overruling his objections to the magistrate's temporary-support ruling without first reviewing a transcript, hearing additional evidence, returning the matter to the referee, or hearing the matter itself.
We find this argument meritless. As we noted above, William failed to present the trial court with a transcript in the manner provided by law, and the trial court had no obligation to obtain its own. The magistrate's order contained sufficient facts to support its findings. The trial court reviewed those facts and found the magistrate's order "fair and equitable." Consequently, the trial court did not err by failing to hold its own hearing, take additional evidence, or return the matter to the magistrate, and we overrule William's third assignment of error.
 IV. "The trial court erred as a matter of law and abused its discretion when it ignored court rules and the trial court prejudiced Defendant['s] rights when it granted Plaintiff's motion for continuance and other motions filed in the proceeding prior to trial."
In his fourth assignment of error, William contends the trial court erred by granting appellee Cathy Stewart's motion for a continuance without also setting a definite trial date. We find this argument unsupported by the record. The trial court granted at least two motions for a continuance, and both times the court set a trial date. See Journal Entry Nos. 50 54. Although the gravamen of William's argument regarding the continuances is somewhat unclear, this court has reviewed the record and remains convinced that William suffered from no prejudicial error. The difficulty in responding to William's assignment of error stems, in part, from his blending of multiple issues in his argument. In addition to his continuance argument, William raises arguments concerning the trial court's overruling of his Civ.R. 60(B) motion and his motion to set aside the magistrate's temporary order. We agree with the trial court, however, that Civ.R. 60(B) was inapplicable. Furthermore, as we explained above, we find no error in the trial court's ruling on William's motion to set aside the magistrate's order. Accordingly, we overrule his fourth assignment of error.
 V. "The trial court erred as a matter of law when it awarded Plaintiff temporary spousal support at final hearing, in consideration of the facts that money withheld from Defendant's wages was being held in account at the Montgomery County Support Enforcement Agency and Plaintiff never demonstrated need, and to make such an award prejudiced Defendant['s] rights and constitutes an abuse of the trial court's discretion."
In his fifth assignment of error, William argues that the trial court erred by awarding Cathy temporary spousal support at the hearing prior to the court's issuance of its final judgment and decree of divorce. More specifically, he argues that he lacks the ability to pay and that Cathy failed to demonstrate need. In support, he notes that the temporary spousal support was held in escrow and that Cathy never sought to have the funds released.
We find William's arguments unpersuasive. At the July 14, 1997, final hearing, the trial court ordered William to continue paying spousal support pendente lite, previously ordered pursuant to Civ.R. 75(M)(1), until the filing of the divorce decree, at which time Wiliam's spousal support obligation terminated. In particular, the trial court stated:
 "It will be the order of this court that the temporary orders of this court are in effect until the final decree goes on. Any amounts under the temporary order that are in arrearage shall be brought up to date effective with the filing of the final divorce. Now, if that money has been paid into the support bureau and is being held there, it is ordered that that money immediately be released and turned over to the plaintiff. And that's the child support and/or spousal support."
In his brief to this court, William suggests that the trial court erred by requiring payment of the previously ordered temporary spousal support. He also suggests that the original award of temporary spousal support was unwarranted. We cannot agree. At the time of the final hearing, a temporary spousal support order existed requiring William to pay $650 per month. At the hearing, Cathy testified that she had not been receiving full payment, and William alleged that it was being held in escrow by the support enforcement agency. The trial court's ruling simply recognized William's existing obligation. It ordered him to bring his payments up to date if they were delinquent. Otherwise, it ordered the support enforcement agency's release of any escrowed funds to Cathy if William had paid them. We find no error in this ruling.
Furthermore, we find no abuse of discretion in the award of spousal support pendente lite under Civ.R. 75. Cathy requested the temporary spousal support and provided the trial court with an affidavit of income, expenses, and financial disclosure. William also provided the trial court with an affidavit of income, expenses, and financial disclosure. After reviewing the affidavits, the trial court awarded Cathy $650 per month as temporary spousal support. William objected and requested a hearing. A magistrate conducted the hearing and subsequently issued a February 11, 1997, order finding the temporary support proper. In its ruling, the magistrate noted that William admitted earning gross income of $30,887.73. The magistrate also noted that Cathy's estimated income was $24,372. The magistrate then explained:
 "The Defendant [William] believes that the Court should consider the increase in the earnings of the Defendant in the past year or so. In light of her earnings increasing at a greater rate than the Defendant, he believes that the Court should adjust its temporary child support order and temporary spousal support to reflect this greater increase. Further, he believes that in light of his support of the family that the Court would have discretion to order a nominal $50 per month in support. This is obviously not a valid or legal consideration in light of the Defendant's $30,000 annual gross income.
 "The child support ordered on January 6, 1997, is an amount which is less than the child support guidelines amount of support. The disparity in income justifies the spousal support ordered, which only includes the Plaintiff's rent/mortgage. This is especially fair and reasonable when you consider that the total housing expense for the Plaintiff is $1,010, including utilities, and the total housing expense for the Defendant is $415 per month, including utilities."
The trial court subsequently overruled William's objections to the magistrate's order. The trial court found the order "fair and equitable" because Cathy's monthly living expenses were almost $600 per month more than his expenses, and because she had two people living in her home. The trial court also noted that William listed erroneous figures on his affidavit of income. Finally, the court expressed its "lack of amusement" at William for writing child support checks out to his eleven-year-old son. Based upon the record before us, we find no abuse of discretion in the trial court's ruling. Accordingly, we overrule William's fifth assignment of error.
 VI. "The trial court erred as a matter of law and prejudiced Defendant['s] rights when it awarded Plaintiff attorney fees without weighing the award against all necessary criteria and the trial court abused its discretion when it directed the award as a punitive measure against Defendant."
In his sixth assignment of error, William contends the trial court erred by awarding Cathy $1,000 as attorney fees. He argues that Cathy incurred the expenses by filing responses to his motions when she had no obligation to do so. Additionally, he argues that the court failed to consider his ability pay the fees. William also contends Cathy failed to present evidence demonstrating the nature of her attorney's services or the cost of those services.
During the July 14, 1997, Cathy testified that she had paid her attorney a $500 retainer and that her attorney's fee's probably would exceed $3,000. She failed to present any evidence substantiating these claims. Nevertheless, she sought an award of attorney fees to cover the expenses. The trial court granted Cathy's request in a ruling from the bench, stating:
 "The court finds that the defendant is unrepresented by counsel, and unfortunately so. The court finds that the defendant has filed numerous motions in this court putting the plaintiff to additional expense of counsel, and it's ordered that he pay the defendant as a portion of her expenses of suit and being represented in this court, the sum of $1,000 which he can pay over a period of time, a reasonable period of time on a monthly basis."
Later in its final judgment and decree of divorce, the trial court ordered William to pay Cathy $1,000 toward her attorney fees within six months.
Normally, a party requesting attorney fees must prove that the expenses incurred were reasonable and necessary. Accordingly, testimony should be taken on the attorney fees issue. Thomas v.Thomas (March 31, 1995), Greene App. No. 94-CA-18, unreported. Furthermore, R.C. 3105.18(H) provides:
 "In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings * * * if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating his rights and adequately protecting his interests if it does not award reasonable attorney's fees."
In the present case, the trial court failed to determine the reasonableness of Cathy's fees. However, in Petrusch v. Petrusch
(March 7, 1997), Montgomery App. No. 15960, unreported, this court upheld a $1,750 attorney fee award that the trial court had granted without a hearing on the issue. In our ruling, we noted that "[a]lthough normally testimony should be taken to justify a[n] award of attorneys fees, no one could contest that attorneys fees in the amount of $1,750 was reasonable and necessary in the prosecution of this divorce proceeding." Id.
Similarly, in the present case the record reflects Cathy's participation in two oral hearings and her response to numerous interrogatories and motions. The vast majority, if not all, of William's motions were overruled. After reviewing the record and reading the transcripts, we agree with the trial court's determination that William caused Cathy to incur substantial expenses litigating what, at its core, was a simple divorce proceeding. Based upon the record before us, we believe no reasonable person could argue that attorney fees of $1,000 were unreasonable. Petrusch, supra. Accordingly, we overrule William's sixth assignment of error.
 VII. "The trial court erred as a matter of law and prejudiced Defendant['s] rights when it directed Defendant's motion to dismiss Plaintiff's claim against Defendant and the trial court abused its discretion when it dismissed over Defendant's objection and without allowing Defendant to offer rebuttal, evidence, or testimony in response to Plaintiff's claim and prayer for relief."
In his seventh assignment of error, William appears to argue that the trial court erred by overruling his motion to dismiss Cathy's divorce complaint.
We find William's argument difficult to follow. William insists that he moved to dismiss Cathy's complaint pursuant to Civ.R. 41(B)(1) and Civ.R. 41(B)(2). Those provisions provide that a trial court may dismiss a plaintiff's action following the presentation of the plaintiff's case in a non-jury matter or when the plaintiff fails to prosecute or fails to comply the civil rules or a court order.
Upon review, we are convinced the trial court did not err in refusing to dismiss Cathy's complaint. William appears to argue that dismissal was warranted because Cathy committed egregious discovery violations. After reviewing the record, however, we cannot say the trial court abused its discretion by failing to find discovery violations serious enough to justify dismissal.
Likewise, we find no error in the trial court granting her a divorce based upon the parties living separate and apart. The trial court properly found that the evidence presented supported Cathy's complaint. We also find no error in the trial court implicitly rejecting William's complaint, which sought a divorce on the basis of willful absence, adultery, and gross neglect. Accordingly, we overrule his seventh assignment of error.
 VIII. "The trial court erred as a matter of law, abused its discretion, and prejudiced Defendant['s] rights when it ordered division by distributive award of his unvested, unmatured PERS retirement allowance without considering necessary statutory factors, other criteria established by law, or whether Plaintiff had assets to offset the value of Defendant's retirement allowance."
In his eighth assignment of error, William contends the trial court erred by awarding Cathy one-half of his Public Employee Retirement System pension. In support, he argues that his two and one-half years of contributions to PERS began after the parties' separated but before the final judgment and decree of divorce. Under these circumstances, William argues that his PERS contributions are not "marital property." William also contends the trial court failed to specify the dates it used to define the phrase "during the marriage" when dividing the parties' property.
As William stresses, R.C. 3105.171(G) directs a trial court to "specify the dates it used in determining the meaning of `during the marriage'" when dividing marital property. The trial court's final judgment and decree of divorce specifies the date the parties married but it does not specify an ending date. We note however the existence of R.C. 3105.171(A)(2), which states:
 "(2) `During the marriage' means whichever of the following is applicable:
 "(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;
 "(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court."
Although the trial court should have expressly stated the beginning date and ending date used to define "during the marriage," we find no reversible error in the trial court's failure to do so. The trial court recognized that the parties married on July 14, 1984. Furthermore, a review of the final hearing transcript and the trial court's final judgment and decree of divorce makes clear that the trial court considered "during the marriage" to include the time up to and including the final hearing. At the final hearing, the trial court deemed William's PERS contributions "marital property" notwithstanding William's argument that he contributed the money while living separate from Cathy. Thus, trial court plainly adopted the definition of "during the marriage" found in R.C. 3105.171(A)(2)(a). If the trial court had found it equitable to define "during the marriage" differently pursuant to R.C. 3105.171(A)(2)(b), it would not have considered William's PERS account as marital property in the final judgment and divorce decree.
In another argument, William contends the trial court erred by granting Cathy a distributive award equaling one-half of his PERS account without complying with R.C. 3105.171(E) and (F). A "distributive award" is defined in R.C. 3105.171 as "any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property and do not constitute payments of spousal support, as defined in section 3105.18 of the Revised Code."
A trial court may make a distributive award if division of the marital property in kind or in money would be impractical or burdensome. Smith v. Smith (1993), 91 Ohio App.3d 248, 256. A distributive award of periodic installment payments may be used to award one spouse her share of the other spouse's PERS account. Id.
Before ordering a distributive award, however, "the trial court must determine that a division of the marital property in kind or in money would be impractical or burdensome. R.C. 3105.171(E)(2). Furthermore, the court is required to consider the nine factors set out in R.C. 3105.171(F) * * *." Id. Among the factors the trial court should consider are the parties assets and liabilities and the liquidity of the property to be distributed. Id.
In Smith, supra, the court noted that a PERS account is a non-liquid asset that cannot be withdrawn until the employee terminates government employment. Furthermore, the court found no evidence that the employee-spouse possessed sufficient other assets to pay a distributive award. The court explained:
 "Moreover, the evidence of the factors set forth in R.C. 3105.171(F) does not support a distributive award in this case, at least in the absence of definitive findings. A review of the liquidity of the property reveals that there is no dispute that defendant's PERS account cannot be withdrawn in whole or in part as long as he remains employed by the state of Ohio. His interest cannot be withdrawn to effectuate a division. A review of the parties' assets pursuant to R.C. 3105.171(F)(2) reveals these parties do not have substantial other assets with which to offset the value of plaintiff's share of defendant's pension.
 "Neither does defendant have substantial other assets from which to pay a distributive award. When the court divides a nonliquid pension benefit, it is inequitable to order a distributive award from current income absent the existence of substantial other assets or an agreement of the parties. Enjoyment of a pension asset is delayed until such time as it becomes payable under the plan such as an attained age or infirmity. To force a spouse, who lacks significant financial resources to pay from current income the value of a delayed benefit ordinarily would be inequitable since the payee would enjoy a present benefit (although reduced) at the expense of the payor spouse's reduction in available current funds, especially in view of the fact the pension can be divided in an alternative manner."
Id. at 257.
Similarly, in the present case, the trial court failed to consider the statutory requirements of R.C. 3105.171(E)(2) and3105.171(F) when making a distributive award to compensate Cathy for her share of William's PERS account. The final judgment and divorce decree directs William to pay Cathy one-half the value of his pension within one year. Because the record reflects that Williams salary is relatively modest, however, and because the parties possess few, if any, assets, we cannot say with certainty that the trial court's failure to make the appropriate findings constitutes harmless error. Accordingly, we must sustain this portion of William's assignment of error and remand this cause for the appropriate determinations.
William also contends the trial court erred by awarding Cathy one-half the value of his PERS account because he has worked for the government less than three years and the pension is unvested. In Shepard v. Shepard (Dec. 28, 1994), Darke App. No. 1341CA, however, this court found unvested PERS retirment benefits subject to present-value calculation and subject to division as marital property. Furthermore, although William's right to receive a monthly benefit upon retirement has not vested, he does possess a right to receive his present contributions in a lump sum upon separation from the government. This right alone has been deemed a marital asset. Smith v. Smith (1993), 91 Ohio App.3d 248, 253.
William next contends the trial court erred by failing to determine Cathy's potential social security benefits and offset them against his PERS benefits. Ohio courts have indeed reasoned that social security benefits should be considered along with PERS benefits even though social security benefits, unlike PERS benefits, are not divisible assets. Eickelberger v. Eickelberger
(1994), 93 Ohio App.3d 221; Smith, supra. In the present case, however, William failed even to raise the social security benefits issue at the final hearing. Instead, he attempted to argue, without supporting evidence, that Cathy had acquired certain real property following the parties' separation, but before the final hearing, that should have been offset against the PERS award. He did raise the issue, however, in "objections" to a proposed final judgment and divorcee decree prepared by Cathy's counsel.
Ordinarily, we might be loathe to reverse the trial court's judgment simply on the basis of its failure to address Cathy's potential social security benefits given William's short-term government employment and the relatively small nature of Cathy's interest. Having found a remand necessary for other reasons, however, we direct the trial court at least to consider Cathy's potential social security benefits on remand when determining her marital share of William's PERS benefits. As William stresses, the trial court also should set a date for valuation of William's PERS account. For the foregoing reasons, we sustain William's eighth assignment of error in part and overrule it in part.
 IX. "The trial court erred as a matter of law, abused its discretion, and prejudiced Defendant['s] rights when it did not verify Plaintiff's self-generated income or ordinary and necessary expenses and when the trial court did not actually complete a child support computation worksheet and make it part of the record."
In his ninth assignment of error, William argues that the trial court erred by failing to verify Cathy's income and expenses, and by failing to complete a child support worksheet and include it in the record.
Although Cathy provided William and the trial court with tax returns and an affidavit of her income and expenses, William claims R.C. 3113.215(B)(5)(a) also obligated Cathy to verify her income and expenses with paystubs, receipts, expense vouchers, etc. That provision states:
 "(a) The parents shall verify current and past income and personal earnings with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns."
In the present case, the record reflects that the trial court possessed sufficient evidence, in the form of Cathy's tax returns and her financial affidavit, to compute William's child support obligation. In light of R.C. 3113.215, however, we agree that William was entitled to verification of this evidence. Unfortunately, William never properly subpoenaed this information prior to the final hearing and never deposed Cathy. He bore the responsibility of ensuring, through a subpoena duces tecum, that Cathy produced any documents he deemed relevant. In re theDissolution of Marriage of Al-Faour (1990), 68 Ohio App.3d 279,284. The trial court recognized William's failure to do so at the July 14, 1997, final hearing, stating:
 "All right, Mr. Stewart. On more than one occasion, you were told to do yourself a favor, to employ an attorney to represent you and let him file the necessary and proper documents in order to obtain what you appear to want today. Now, the original orders here required all discovery to be done by a certain date. And I think that date was perhaps June or maybe June 1st or something. But all the parties to these cases are notified that they must complete all discovery by a certain date.
* * *
 "Now, you're not expected to be an attorney and to know all of these things. And that is why it was suggested to you to get an attorney to inform you and get these things done by the proper times and dates. And you didn't see fit to do that. Now you find yourself in court, and there's some information you apparently want that you didn't get too timely, and you're complaining, and you want a continuance. But you can't have it, and I'm not going to order it."
In a second argument, William contends the trial court erred by not completing a child support computation worksheet itself and including the worksheet in the record. In support, he citesFallang v. Fallang (1996), 109 Ohio App.3d 543, which states that trial court must actually complete the child support worksheet and may not adopt a worksheet prepared by any party.
We find William's argument meritless. In Fallang, the Twelfth District Court of Appeals relied upon its earlier opinion in In reKrechting (1996), 108 Ohio App.3d 435, to hold that a trial court, or a magistrate, must complete the worksheet. The Krechting
court, however, cited no authority for this requirement; and we find none in the Ohio Revised Code. In Marker v. Grimm (1992),65 Ohio St.3d 139, the Ohio Supreme Court noted that R.C. 3113.215
requires a child support computation worksheet to be completed and made a part of the record. Nothing in the majority opinion or the statute precludes the trial court from reviewing and adopting as its own a worksheet prepared by a party. At least one other appellate district has agreed with this conclusion. See Franke v.Franke (May 1, 1996), Highland App. No. 95 CA 879 at fn.2, unreported.
The Fourth District Court of Appeals, however, has held that any worksheets relied upon by the trial court must be completed, signed by both parties, dated, and notarized. McCoy v. McCoy
(1995), 105 Ohio App.3d 651; Blake v. Blake (May 4, 1995), Gallia App. No. 94CA16, unreported. In reaching this conclusion, the Fourth District relied upon Marker, supra, at 142 and R.C.3113.215(E). In our view, neither authority imposes such a requirement before a trial court may adopt a worksheet. R.C.3113.215(E) simply provides a sample child support computation worksheet. Admittedly, the worksheet does contain signature lines for each party and lines for the notarization of each party's signature. We find nothing in the statute, however, requiring a party to sign the worksheet. Furthermore, we note R.C.3113.215(B)(1), which states only that "[i]n performing its duties under this section, the court or agency is not required to accept any calculations in a worksheet prepared by any party to the action or proceeding." (Emphasis added). Significantly, the statute does not prohibit the trial court from accepting and adopting a worksheet with the calculations completed.
Similarly, nothing in Marker, supra, mandates that both parties must sign and notarize a worksheet before the trial court may adopt it. Contrary to the Fourth District's holding, the cited portion of Marker imposes no such requirement. The Marker court held that the trial court must "use" the worksheet and that support must be calculated "in accordance with" the worksheet. The court also noted that "[t]he responsibility to ensure that the calculation is made using the schedule and worksheet rests with the trial court." Furthermore, the Marker court itself noted that a trial court "is not required to accept any calculations in a worksheet prepared by any party to the action or proceeding." (Emphasis added) Id. at 142.
In the present case, we find no abuse of discretion in the trial court including a completed worksheet with its final judgment and decree of divorce. The worksheet's data is sufficient to permit effective appellate review. In addition, the record reflects that William's notarized signature is absent only because he refused to sign the worksheet after having an opportunity to do so. Accordingly, we overrule William's ninth assignment of error.
 X. "The trial court erred as a matter of law when it ordered payment of alimony to Plaintiff and the trial court abused its discretion and prejudiced Defendant['s] rights when it ordered division of property as a distributive award despite the fact that Plaintiff did not demonstrate she was entitled to the award."
In his final assignment of error, William contends the trial court erred by awarding Cathy spousal support and by granting her a distributive award. We find these arguments meritless. The only spousal support awarded to Cathy was spousal support pendente lite under Civ.R. 75. As we explained above, we find no error in this temporary spousal support award. The trial court did not award Cathy any new spousal support at the final hearing. Instead, it simply held William responsible under the existing pendente lite order. Furthermore, we fully addressed William's argument regarding a distributive award in his eighth assignment of error. We need not repeat that analysis here. Accordingly, we overrule his tenth assignment of error. Having sustained a portion of William's eighth assignment of error, however, we reverse that part of the trial court's judgment and remand this cause for further proceedings.
Judgment affirmed in part, reversed in part, and cause remanded.
FAIN, J. and GRADY, J., concur.
Copies mailed to:
Wayne P. Stephan
William H. Stewart, III
Hon. Charles A. Lowman
[1] William also has presented this court with a March 30, 1998, "motion for diminution of the record." In his motion, William asks this court to correct omissions in a transcript filed October 21, 1997. He recites three grounds for his motion. First, he cites unspecified "omissions in the record" that are material to his appeal. We find this basis unpersuasive given its failure to identify any specific omission. William next contends that the "[t]ranscript copy was not certified by the court reporter as correct and complete transcript was requested, an oversight that can only be accident or error." We find this assertion somewhat unclear. The transcript in question contains certification from the court reporter, and we see no need to "correct" it. Finally, William alleges that certain exhibits were not attached to the transcript's back page. This court's copy of the transcript, however, does contain the exhibits William contends are missing. Consequently, we overrule his motion for diminution of the record.