[Cite as *Washington v. Covelli*, 2015-Ohio-2928.]

COURT OF APPEALS
MAHONING COUNTY, OHIO
SEVENTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| HERBERT L. WASHINGTON, ET AL. | : | | JUDGES: |
| | : | | Hon. W. Scott Gwin, P.J. |
| Plaintiffs-Appellants | : | | Hon. Sheila G. Farmer, J. |
| | : | | Hon. Patricia A. Delaney, J. |
| -vs- | : | | |
| | : | | |
| SAM COVELLI, ET AL. | : | | Case No. 2013 MA 83 |
| | : | | |
| Defendants-Appellees | : | | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Court of Common
                             Pleas, Case No. 1998 CV 2332

JUDGMENT:                    Affirmed/Reversed in Part and
                             Remanded

DATE OF JUDGMENT:            June 30, 2015

APPEARANCES:

For Plaintiffs-Appellants              For Defendants-Appellees

THOMAS J. LIPKA                        KEVIN P. MURPHY
EDWIN ROMERO                           MATTHEW G. VANSUCH
201 East Commerce Street               108 Main Avenue
Atrium Level Two                       Suite 500
Youngstown, OH  44503-1641             Warren, OH  44481

*Farmer, J.*

{¶1} Pursuant to a Purchase and Sale Agreement entered into on August 18, 1998, appellant, Herbert Washington, purchased nineteen of thirty McDonald's restaurants owned by appellee, Sam Covelli. The agreement included a "Piracy and Nondisclosure" clause to prevent appellee from "cherry-picking" the best employees for his own businesses. Appellee was restricted from hiring managers and supervisors for six months and hiring shift managers and assistant managers for three months. The clause contained liquidated damages in the event of a breach, $500.00 per day for each manager and supervisor and $200.00 per day for each of the remaining covered employees. Closing occurred on September 22, 1998.

{¶2} On October 9, 1998, appellant and his company filed a complaint against appellee and his companies for damages, claiming appellee violated the piracy clause and stole fourteen employees. Appellant received a temporary restraining order and sought a preliminary injunction.

{¶3} On October 9, 1998 and October 4, 2002, appellee filed an answer and counterclaim and amended answer and counterclaim, respectively, claiming interference with business relationships and alleging appellant stole employees from him in violation of the Franchise Agreement between McDonald's and appellant. Appellee argued since he continued to operate McDonald's restaurants until March of 1999, he was a third-party beneficiary of said Franchise Agreement. Appellee also sought a preliminary injunction.

{¶4} On October 20, 1998, the parties entered into a stipulated preliminary injunction to halt further "employee poaching" while the case was litigated. By

magistrate's decision filed October 1, 1999, appellee was found to have violated the stipulated injunction and was ordered to pay appellant $7,500.00 as a civil contempt sanction. By judgment entry filed October 26, 1999, the trial court approved and adopted the magistrate's decision.

{¶5} A trial before a magistrate commenced on June 14, 2004. By decision filed September 24, 2007, the magistrate found in favor of appellant in the amount of $86,000.00 plus interest and attorney fees ($7,507.49) with interest and in favor of appellee in the amount of $35,400.00 plus interest. Pursuant to a request for findings of fact and conclusions of law, the magistrate issued another decision on August 22, 2011 to explain how he arrived at the stated amounts. The magistrate found appellee violated the terms of the piracy clause and appellant violated the terms of the Franchise Agreement of which appellee was a third-party beneficiary.

{¶6} Appellant filed objections. By judgment entry filed April 25, 2013, the trial court overruled the objections and approved and adopted the magistrate's decision.

{¶7} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶8} "THE TRIAL COURT ERRED IN FINDING THAT THE STIPULATED PRELIMINARY INJUNCTION LIMITED THE PIRACY CLAUSE'S RESTRICTED PERIODS."

II

{¶9} "THE TRIAL COURT ERRED IN AWARDING COVELLI DAMAGES."

I

{¶10} Appellant claims the trial court erred in determining the cut-off date for damages was October 20, 1998, the date the parties entered into the stipulated preliminary injunction. We agree.

{¶11} The arguments raised herein involve contract interpretation and are therefore questions of law which will be reviewed de novo. *Nationwide Mutual Fire Insurance Company v. Guman Brothers Farm,* 73 Ohio St.3d 107 (1995). Under de novo review, an appellate court may interpret the language of the contract and substitute its interpretation for that of the trial court. *Children's Medical Center v. Ward,* 87 Ohio App.3d 504 (2nd Dist.1993).

{¶12} Following the stipulated preliminary injunction, the magistrate found appellee violated said injunction in a decision filed October 1, 1999, approved and adopted by the trial court on October 26, 1999. Appellee was ordered to pay appellant $7,500.00 as a civil contempt sanction. Appellee argues the decision is controlling wherein the magistrate found the following:

> With the foregoing in mind, defendants were in contempt of the Injunction for a period of 75 days. At argument, plaintiffs' counsel urged that the Court find damages in the amount of $37,500.00. This represents $500.00 per day as was the liquidated damages clause of the sale agreement. *However, the sales agreement is no longer in effect and only constitutes some evidence of the loss sustained by plaintiffs.* It is the judgment of the undersigned that the damages allowable for the civil

contempt of defendants is a much lower amount. Based upon the evidence, the undersigned finds as damages the amount of $7,500.00. There is no easy method for calculating these damages. It is the undersigneds (sic) judgment that the activity of defendants agents in the employing of Housteau was most likely an error, not a long planned subversion of the Injunction. It is further felt that a significant award of $7,500.00 will preclude defendants or plaintiffs from further breaches of the Injunction. The Order Granting Stipulated Preliminary Injunction shall remain in effect until the Court can conduct a trial on the merits as to all issues raised by the parties in their respective pleadings and motions. No bond shall be required of either party. (Emphasis added.)

{¶13} Appellee argues the highlighted dicta was never objected to pursuant to Civ.R. 53(D) and therefore the issue is not properly appealable and is binding for subsequent decisions. We conclude the dicta is not a bar to the pursuance of this appeal for the following reasons.

{¶14} First, at the time of the issuance of the October 1, 1999 decision, the piracy clause, Section 2.22 of the Purchase and Sale Agreement, had expired. The Purchase and Sale Agreement closed on September 22, 1998. The piracy clause was enforceable for up to six months or March 22, 1999. The magistrate's civil contempt decision was filed on October 1, 1999. Secondly, the magistrate's decision was to the limited issues raised by appellee's motion to dissolve or modify the preliminary injunction and appellant's motion for order to show cause. It was not determinative of

the issues raised in the complaint, answer, counterclaim, and stipulated preliminary injunction.[1] We conclude the timeliness of this appeal is not barred by the dicta included in the magistrate's decision.

{¶15} The gravamen of this assignment of error is the effect of the stipulated preliminary injunction upon the determination of damages for the breach of Section 2.22 of the Purchase and Sale Agreement.

{¶16} The magistrate's August 22, 2011 decision and the trial court's April 25, 2013 judgment entry approving and adopting the decision do not specifically explain why the stipulated preliminary injunction cut-off the damages to appellant, nor do they discern whether any of the covered employees pirated by appellee were employed for the full three or six month period as set forth in the piracy clause. The language of the magistrate's decision simply states without any discussion or novation that the damages covered the time period from "after Closing, September 22, 1998, and on or before October 20, 1998, the date of the stipulated preliminary injunction."

{¶17} The issue then is whether the stipulated preliminary injunction was a novation to the September 22, 1998 Purchase and Sale Agreement.

{¶18} As explained by the Seventh District in *Gardner v. Oxford Oil Company,* 7th Dist. Monroe No. 12 MO 7, 2013-Ohio-5885, ¶ 22-23:

"A contract of novation is created where a previous valid obligation

is extinguished by a new valid contract, accomplished by substitution of

parties or of the undertaking, with the consent of all the parties, and based

---

[1]We note the defense of the stipulated preliminary injunction was not raised in the pleadings until appellee's amended counterclaim of October 4, 2002.

on valid consideration." *Williams v. Ormsby,* 131 Ohio St.3d 427, 2012-Ohio-690, 966 N.E.2d 255, ¶ 18. A "novation can never be presumed but must be evinced by a clear and definite intent on the part of all the parties to the original contract to completely negate the original contract and enter into the second." *Id.*

Further, "[B]ecause a novation is a new contract, it too must meet all the elements of a contract." *Id.* at ¶ 19. "Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." *Kostelnik v. Helper,* 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16 (citation omitted).

{¶19} Section 2.22 of the Purchase and Sale Agreement specifically provided for liquidated damages "for each day a Covered Employee is employed by any of the Sellers in the amount of Five Hundred Dollars ($500) for a manager, and two hundred dollars ($200) for any other Covered Employee." The language of Section 2.22 clearly states the amount of damages pertains to any time a covered employee is pirated during the three month period (shift and assistant managers) or six month period (managers and supervisors) from the date of the Purchase and Sale Agreement. Therefore, the cut-off dates would have been December 22, 1998 and March 22, 1999.

{¶20} A temporary restraining order was issued on October 9, 1998, enjoining appellee from "directly or indirectly contacting or soliciting" and "employing or continuing

to employ" any of the covered employees.  Also on October 9, 1998, prior to the issuance of this temporary restraining order, appellee filed an answer and counterclaim, alleging appellant hired away appellee's employees in violation of Section 14 of its Franchise Agreement with McDonald's.  On October 13, 1998, appellee filed a motion to dissolve or modify the restraining order, specifically citing to the claim that appellant was in violation of Section 14 of its Franchise Agreement.  On October 15, 1998, appellant filed a memorandum in opposition to said motion.  A hearing for the preliminary injunction was set for October 22, 1998.  However, on October 20, 1998, the trial court filed an "Order Granting Stipulated Preliminary Injunction" which restrained each party from pirating each other's "store managers, supervisors, shift managers and assistant managers or other personnel presently employed."  The stipulated preliminary injunction noted: "THIS ORDER is entered by agreement of the parties, and is not intended as a determination or adjudication of any of the issues raised by the respective pleadings and motions of the parties."

{¶21}  Appellee argues the stipulated preliminary injunction is a novation of the original language of the Purchase and Sale Agreement, as the order replaced and superseded the provisions of Section 2.22 and its three/six month time limits.

{¶22}  From our review of the pleadings, the issues that were potentially arguable at the trial court's October 22, 1998 preliminary injunction hearing date were (1) a denial of pirating by appellee, (2) appellee's claim of "unclear hands" against appellant under the Franchise Agreement with McDonald's, and (3) continual acts by appellee in violation of Section 2.22 of the Purchase and Sale Agreement.

{¶23} As noted by the parties, the agreed injunction was an attempt at a "cease fire," and added the provision of "mutual pirating" of each other's employees. The stipulated preliminary injunction set the scene for how the parties were going to proceed in the future. By the specific language at the conclusion of the agreement cited above, it reserved the issues raised by the pleadings and motions.

{¶24} Although the stipulated preliminary injunction was a valid contract for the conduct of the parties in the future, we find it was not a novation to the Purchase and Sale Agreement. There is no specific reference that the stipulated preliminary injunction superseded the provisions of the agreement. It is inconceivable that these sophisticated enterprises would omit such an important concession. It is more probable that the precise wording of the stipulated preliminary injunction reserved the issues raised by the pleadings and motions.

{¶25} Upon review, we find the trial court erred in cutting off damages for the covered employees named in the verified complaint. The matter is remanded to assess damages for the named fourteen covered employees listed in the August 22, 2011 magistrate's decision during the times they were employed by appellee within the three/six month periods.

{¶26} Assignment of Error I is granted.

II

{¶27} Appellant claims the trial court erred in awarding appellee damages as a third-party beneficiary to the Franchise Agreement between appellant and McDonald's. We disagree.

{¶28} As in the previous assignment of error, the issues herein are reviewed de novo. *Nationwide, supra*; *Children's, supra.*

{¶29} In *Nationwide Insurance Company v. Rice,* 5th Dist. Muskingum No. CT2001-0017, 2001 WL 1744493, *3 (Oct. 15, 2001), this court explained the following:

"A third party beneficiary is one for whose benefit a promise has been made in a contract but who is not a party to the contract." *Chitlik v. Allstate Ins. Co.* (1973), 34 Ohio App.2d 193, 196. "The third party need not be named in the contract, as long as [she] is contemplated by the parties to the contract and sufficiently identified." *Id.* Moreover, the "promisee must intend that a third party benefit from the contract in order for that third party to have enforceable rights under the contract[.]" *Laverick v. Children's Hosp. Med. Ctr. of Akron* (1988), 43 Ohio App.3d 201, 204.***The contract does not have to name the third-party beneficiary, as long as "the third person is in the contemplation of the parties." *Hines v. Amole* (1982), 4 Ohio App.3d 263, 268.

{¶30} As explained by our brethren from the Eleventh District in *James v. Sky Bank,* 11th Dist. Trumbull No. 2010-T-0116, 2012-Ohio-3883, ¶ 33: "[a] party seeking damages for breach of contract must present sufficient evidence to show entitlement to damages in an amount which can be ascertained with reasonable certainty."

{¶31} Appellee claims he is third-party beneficiary of the Franchise Agreement between appellant and McDonald's and appellant violated Section 14 of said agreement which states the following:

14. *Inference With Employment Relations of Others.* During the term of this Franchise, Franchisee shall not employ or seek to employ any person who is at the time employed by McDonald's, any of its subsidiaries, or by any person who is at the time operating a McDonald's restaurant or otherwise induce, directly or indirectly, such person to leave such employment. This paragraph 14 shall not be violated if such person has left the employ of any of the foregoing parties for a period in excess of six (6) months.

{¶32} Appellee argues appellant violated this provision by pirating some of his employees while he continued to operate McDonald's restaurants. Appellant argues appellee was not an intended beneficiary under his Franchise Agreement with McDonald's and at most, was an incidental beneficiary and therefore not entitled to claim a breach of contract. Under the totality of circumstances, we find appellee was an intended beneficiary under the Franchise Agreement for the following reasons.

{¶33} Appellee and appellant are similarly situated parties. Each is privy to its own Franchise Agreement with McDonald's, and each is on equal footing in identical situated enterprises, the operation of McDonald's restaurants. Appellee was still working with and managing under his McDonald's Franchise Agreement at the time of

the pirating of his employees by appellee. The McDonald's Franchise Agreement equally controlled the parties as to their area/location of operation [Section 1(e)], and personal involvement of the major investor (Section 13). Further, the Franchise Agreement in its scope and purpose states that McDonald's franchisees are part of "restaurant system" that is comprehensive, all inclusive, and serves the public under the generalized "good will" of McDonald's [Section 1(a)]. As noted by the magistrate in his August 22, 2011 decision:

¶14 of the Franchise Agreement between Mr. Washington and Mr. Covelli, as Franchisees, and McDonald's Corporation is intended to protect each Franchisee from exactly the type of activity which occurred between the parties. The solicitation and employment of each other's restaurant personnel was destructive in the short-term for each Franchisee. Mr. Washington's employment of persons who worked in Mr. Covelli's McDonald's restaurants caused Mr. Covelli disruptions to his McDonald's business due to uncertain staff scheduling and staffing shortages of experienced workers.

{¶34} We agree that Section 14 is intended to protect McDonald's franchises and their respective franchisees from the pirating of employees. Each franchisee has a duty to not pirate another franchisee's employees.

{¶35} Upon review, we find the trial court did not err in determining that appellee was an intended beneficiary under Section 14 of the Franchise Agreement.

{¶36} The Franchise Agreement included the following restriction at Section 11(a) that was the genesis for the sale of the McDonald's restaurants by appellee to appellant:

> During the term of this Franchise, Franchisee shall not, without the prior written consent of McDonald's, directly or indirectly, engage in, acquire any financial or beneficial interest (including interests in corporations, partnerships, trusts, unincorporated associations, or joint ventures) in, or become a landlord for any restaurant business, which is similar to the Restaurant.

{¶37} Section 18 of the Franchise Agreement covered items that would constitute a "Material Breach." Included in the list at subsection (f) is a violation of Section 11(a).

{¶38} Based upon these provisions, appellant argues appellee cannot now take advantage of Section 14 of the Franchise Agreement as he has "unclean hands" by owning Panera Bread restaurants in violation of his own McDonald's Franchise Agreement and keeping employees that should have gone with appellant under the Purchase and Sale Agreement. Although appellee admitted to owning Panera Bread restaurants while still owning McDonald's restaurants, he claimed McDonald's was aware of this and agreed to maintain their franchise relationship during his period of divestiture. T. at 31-34, 97-98. Appellee admitted to breaching Section 2.22 of the Purchase and Sale Agreement by keeping Caroline Cox as an employee, but argued he

did so after appellant hired away two of his employees not covered under the agreement in breach of a verbal agreement between the parties not to do so. T. at 48-53, 73.

{¶39} The magistrate and trial court concluded the evidence supported appellee's position that McDonald's was "cordial" and cooperative with him during divestiture and even purchased the remaining stores. T. at 30-33, 58-59. As noted by the magistrate in his August 22, 2011 decision:

> The Covelli Group and McDonald's Corporation cooperated in the orderly divestment of McDonald's restaurants by Mr. Covelli. While a Franchisee's acquisition of a significant interest in a restaurant business similar to McDonald's is a material breach of the Franchise Agreement, McDonald's Corporation elected to cooperate with Sellers in their quest to sell its McDonald's franchises. McDonald's Corporation elected to continue to maintain its Franchise Agreements with the Covelli Group during the transition.

{¶40} We find this conclusion to be supported by the evidence. During the time of divestiture, appellee was continuing to manage McDonald's restaurants with the assent of McDonald's. We therefore reject appellant's argument of "unclean hands."

{¶41} There is no dispute that during the relative time periods, appellant hired certain employees of appellee's while appellee was still a franchisee of McDonald's in violation of Section 14 of the Franchise Agreement. Appellee's Chief Financial Officer,

Robert Fiorino, filed an affidavit on June 24, 2003 wherein he averred to the following in pertinent part:

5. Between the closing of the transaction on September 22, 1998 and approximately October 10, 1998, when the Court of Common Pleas, Mahoning County issued its stipulated preliminary injunction, and especially during the first week of October 1998, certain persons employed by Sam Covelli at McDonald's restaurants which were not sold to HLW were induced to quit their employment with Covelli and go to work for HLW Fast Track, Inc. Those persons are: Keith Holzhauser, Manager, Downtown Warren; Maria Beard, Assistant Manager, Downtown Warren; Becky Badila, Manager, Salt Springs Road; Nancy Miletta, Assistant Manager, Salt Springs Road; Breena Deans, Assistant Manager, Salt Springs Road and three crew people from Salt Springs Road, as well as Amy Zinz, Assistant Manager, Austintown Re-Lo; and Scott Creamans, Assistant Manager, Austintown Re-Lo. Also induced to leave Covelli's employment were Ken Antonucci and Mark Beechy who were maintenance workers employed by Covelli Enterprises, Inc.

6. None of these employees was working at a McDonald's restaurant which was sold to HLW on September 18, 1998.

7. Sam Covelli, or entities controlled by him were operating eleven McDonald's restaurants after the closing on September 22, 1998. The stolen employees were important to the continued operation of the

restaurants in which they were employed. The loss of these employees caused Sam Covelli, or entities controlled by him, significant harm and economic damages.

{¶42} Appellee also filed an affidavit on June 24, 2003 and averred the following in pertinent part:

9. The sale of the nineteen McDonald's restaurants to HLW Fast Track, Inc. and Herbert L. Washington closed on or about September 22, 1998. Thereafter, I continued to operate eleven McDonald's restaurants. These restaurants which I continued to operate were not the subject matter of the purchase and sales agreement with HLW. The employees working at these McDonald's restaurants had nothing to do with, nor were they covered by, the purchase and sales agreement of August 18, 1998.

10. In the weeks following the closing, HLW induced eleven employees of mine who had been working at stores not sold to HLW, to quit their employment with me and to go to work for HLW.

11. These stolen employees were important to my continued operation of the eleven McDonald's restaurants which I operated after the November 22, 1998 closing. On September 24, 1998, I gave notice to McDonald's Corporation of the employee piracy by HLW, and in doing so, I referenced Item 14 in the franchise agreements. See attached Exhibit B.

12. I had many conversations with Mr. Washington over the months leading up to the closing. He knew that I would continue to operate eleven McDonald's restaurants. He also knew that I would need the stolen employees to operate those restaurants.

{¶43} In awarding appellee damages, appellant argues the trial court erred in using the same formula contained in Section 2.22 of the Purchase and Sale Agreement. We concur with the trial court's use of the negotiated damages clause for both the violation of the Purchase and Sale Agreement and for the violation of Section 14 of the Franchise Agreement.

{¶44} It is undisputed that the parties made a decision as to the value of potential pirating. We can only find that to calculate appellee's damages less than appellant's would be error. To use an old adage, "what is sauce for the goose is sauce for the gander." The parties, on equal footing, negotiated the liquidated damages rate and engaged in similar pirating; therefore, they must now abide by its enforcement.

{¶45} Appellant argues to be equitable, either he should be entitled to damages for days prior to the closing date as a franchisee relative to appellee's Franchise Agreement with McDonald's or appellee's award should be reduced for those prior days. We note appellant never raised any claim under appellee's Franchise Agreement with McDonald's.

{¶46} Assignment of Error II is denied.

{¶47}  The judgment of the Court of Common Pleas of Mahoning County, Ohio is hereby affirmed in part and reversed in part, and the matter is remanded to said court for further proceedings consistent with this opinion.

By Farmer, J.

Gwin, P.J. and

Delaney, J. concur.